CITY OF PASADENA, William R. Ridgway, Vanessa Morgan, and Joe Dow, Appellants,

v.

Gurges GENNEDY, Appellee.

Gurges Gennedy, Appellant,

v.

City of Pasadena, William R. Ridgway, Vanessa Morgan, and Joe Dow, Appellees.

No. 01–02–00324–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 8, 2003.

Lee A. Clark, Greenville, Richard E. Risinger, Pasadena, for Appellant.

Ronald G. Wiesenthal, Bellaire, for Appellee.

Panel consists of Justices TAFT, JENNINGS, and HANKS.

## OPINION

TIM TAFT, Justice.

The City of Pasadena ("the City") and William R. Ridgway, Vanessa Morgan, and Joe Dow (collectively, "the enforcing parties") sued Gurges Gennedy to enforce the deed restrictions of the Pasadena River Oaks Subdivision. After a bench trial, the trial court rendered judgment that the enforcing parties take nothing, declared that Gennedy had not violated the subdivision's deed restrictions, and denied attorney's fees to both sides. All parties appealed. We determine (1) whether the evidence was legally sufficient to show that the deed restrictions had expired or, alternatively, that they had been validly amended and, if so, (2) whether we should remand attorney's fees issues when we remand the cause with instructions. We reverse the judgment and remand the cause with instructions.

### Facts and Procedural History

In April 1996, the enforcing parties sued Gennedy to enforce the subdivision's deed restrictions ("the [original] deed restrictions"), alleging that his front-yard fence, which was fewer than 40 feet from the street, violated Section II, Paragraph 19 of the deed restrictions, which paragraph provided that "[n]o fence or wall of any character shall be erected nearer to the front lot line than 40 feet therefrom...." *See* TEX. LOC. GOV'T CODE ANN. § 212.133(a) (Vernon Supp.2004) (allowing eligible municipality to sue to enjoin or to restrain

violations of deed restrictions). The enforcing parties requested permanent injunctive relief, damages, and attorney's fees. *See id.* § 212.153 (Vernon Supp. 2004) (allowing municipality to seek injunction or abatement in suit to enforce restriction's violation); *id.* § 212.156(b) (Vernon Supp.2004) (allowing municipality, in enforcement suit based on ordinance, to recover civil penalty for restriction's violation); TEX. PROP.CODE ANN. § 5.006(a) (Vernon 1984) (providing for award of attorney's fees in action based on breach of restrictive covenant pertaining to real property).

The trial court initially rendered summary judgment in favor of the enforcing parties, granting a permanent injunction against Gennedy and awarding attorney's fees to the enforcing parties. Gennedy appealed. By unpublished opinion, this court reversed the summary judgment because material fact issues existed and remanded the cause. *See Gennedy v. City of Pasadena,* 1999 WL 771522 at *3–5 (Tex. App.-Houston [1st Dist.] Aug. 6, 1998, pet. denied) (not designated for publication).

Upon remand, Gennedy counterclaimed, seeking a declaration that his fence did not violate the deed restrictions because the restrictions had either been modified in writing or because the subdivision's architectural control committee ("ACC") had allowed the variation. Gennedy also requested attorney's fees. The enforcing parties then supplemented their petition, contesting the validity of the modification and the ACC's approval and seeking declaratory relief. At trial, Gennedy argued alternatively that the original deed restrictions had expired entirely by their own terms in January 2000.

After a bench trial, the trial court rendered judgment that the enforcing parties take nothing, declared Gennedy's fence to be "lawfully located and ... not in viola-tion of" the subdivision's deed restrictions, and denied attorney's fees to both sides. The trial court entered fact findings and legal conclusions concerning the original deed restrictions' expiration and amendment, but did not do so with respect to attorney's fees or the ACC's approval. Both parties have appealed.

## Legal Sufficiency

In part of issues one and two in their appeal, the enforcing parties argue that the evidence is legally insufficient to show that the deed restrictions expired by their own terms in January 2000 or, alternatively, that the restrictions were validly amended in 1997. In issue three, the enforcing parties argue that the trial court erred in not ordering Gennedy to remove his fence because the amendment was invalid, the deed restrictions had not expired, and Gennedy had stipulated that his fence did not comply with the original deed restrictions' 40–foot–set–back provision. We construe the enforcing parties' challenges to be to the pertinent fact findings and legal conclusions supporting these aspects of the judgment.

### A. Standard of Review

We review legal conclusions *de novo. See In re Humphreys,* 880 S.W.2d 402, 404 (Tex.1994) ("[Q]uestions of law are always subject to *de novo* review.").

When, as here, we have a complete reporter's record on appeal, we review the trial court's fact findings under the same standards for legal sufficiency as govern the review of jury findings. *Min v. Avila,* 991 S.W.2d 495, 500 (Tex. App–Houston [1st Dist.] 1999, no pet.). Thus, when the complaining party challenges the legal sufficiency of the evidence underlying an adverse finding on which the party did not have the burden of proof, the party must demonstrate on appeal that there is no evidence to support the finding. *Love*

*v. State Bar of Tex.*, 982 S.W.2d 939, 943–44 (Tex.App.-Houston [1st Dist.] 1998, no pet.). In such a review, we consider all evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor, and disregard all evidence and inferences to the contrary. *See Assoc. Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285–86 (Tex.1998). If more than a scintilla of evidence supports the finding, the no-evidence challenge fails. *See Formosa Plastics Corp. USA. v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex.1998). When the complaining party challenges the legal sufficiency of the evidence underlying an adverse finding on which it had the burden of proof, the party must demonstrate on appeal that the evidence conclusively established all vital facts in support of the issue. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex.2001). We employ a two-part test in reviewing such a challenge. *Pac. Employers Ins. Co. v. Dayton*, 958 S.W.2d 452, 455 (Tex.App.-Fort Worth 1997, pet. denied). We first look for evidence supporting the finding, ignoring all evidence to the contrary. *Francis*, 46 S.W.3d at 241. If there is no evidence supporting the finding, we then examine the entire record to see if the contrary proposition is established as a matter of law. *Id.*

"The judgment may not be supported upon appeal by a presumed finding upon any ground of recovery or defense, no element of which has been included in the findings of fact; but when one or more elements thereof have been found by the trial court, omitted unrequested elements, when supported by evidence, will be supplied by presumption in support of the judgment." TEX.R. CIV. P. 299.

**B. Rules Governing the Construction of Restrictive Covenants**

■ The subdivision's deed restrictions were restrictive covenants concerning real property. *See* TEX. PROP.CODE ANN. § 202.001(4) (Vernon 1995) (defining restrictive covenant). Restrictive covenants are subject to the general rules of contract construction. *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex.1998); *Bank United v. Greenway Improvement Ass'n*, 6 S.W.3d 705, 707 (Tex.App.-Houston [1st Dist.] 1999, pet. denied). As when interpreting any contract, the court's primary duty in construing a restrictive covenant is to ascertain the drafter's intent from the instrument's language. *Bank United*, 6 S.W.3d at 708. In ascertaining the drafter's intent, we must examine the covenant as a whole in light of the circumstances present when the covenant was made. *Pilarcik*, 966 S.W.2d at 478. We must give a restrictive covenant's words and phrases their commonly accepted meaning. *Truong v. City of Houston*, 99 S.W.3d 204, 214 (Tex.App.-Houston [1st Dist.] 2002, no pet.). We review a trial court's interpretation of a restrictive covenant *de novo*. *Air Park–Dallas Zoning Comm. v. Crow–Billingsley Airpark, Ltd.*, 109 S.W.3d 900, 909 (Tex.App.-Dallas 2003, no pet.).

■ Whether restrictive covenants are ambiguous is a matter of law for the court to decide. *Pilarcik*, 966 S.W.2d at 478; *Samms v. Autumn Run Cmty. Improvement Ass'n, Inc.*, 23 S.W.3d 398, 402 (Tex.App.-Houston [1st Dist.] 2000, pet. denied). A covenant is unambiguous if, after appropriate rules of construction have been applied, the covenant can be given a definite or certain legal meaning. *Pilarcik*, 966 S.W.2d at 478; *Pitman v. Lightfoot*, 937 S.W.2d 496, 517 (Tex.App.-San Antonio 1996, writ denied) (holding same concerning contracts generally). In contrast, if, after appropriate rules of construction have been applied, a covenant is susceptible of more than one reasonable

interpretation, the covenant is ambiguous. *Pilarcik*, 966 S.W.2d at 478; *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154, 157 (1951). Mere disagreement over a restrictive covenant's interpretation does not necessarily render the covenant ambiguous. *Air Park–Dallas Zoning Cmte.*, 109 S.W.3d at 909.

 At common law, covenants restricting the free use of land are not favored, but will still be enforced when they are confined to a lawful purpose and are clearly worded. *E.g.*, *Wilmoth v. Wilcox*, 734 S.W.2d 656, 657 (Tex.1987). Accordingly, under the common law, a restrictive covenant's words cannot be enlarged, extended, stretched, or changed by construction. *Id.* All doubts concerning a restrictive covenant's terms are resolved in favor of the free and unrestricted use of the land, and any ambiguity must be strictly construed against the party seeking to enforce the covenant. *Id.*

In 1987, the Legislature amended the Texas Property Code to provide that all restrictive covenants contained in instruments governing certain residential developments, regardless of the date on which the covenants were created, must be liberally construed to give effect to their purposes and intent. *See* Tex. Prop.Code

Ann. §§ 202.002(a), 202.003(a) (Vernon 1995) (added by Act of June 1, 1987, 70th Leg., R.S., ch. 712, § 1, 1987 Tex. Gen. Laws 2585, 2585). Some courts of appeals have recognized that the common-law requirement of construing restrictions strictly and section 202.003(a)'s requirement of construing residential covenants liberally to effectuate their purposes and intent might appear contradictory.[1] *See Dyegard Land P'ship v. Hoover*, 39 S.W.3d 300, 309 (Tex.App.-Fort Worth 2001, no pet.); *see also Herbert v. Polly Ranch Homeowners Ass'n*, 943 S.W.2d 906, 908 n. 2 (Tex.App.-Houston [1st Dist.] 1996, no writ) ("Even after the enactment of § 202.003, this Court stated that covenants restricting the free use of land were not favored. It is not necessary for us to resolve *such discrepancies* today because under either approach we would reach the same result in this case.") (emphasis added; citations omitted). Apparently on this basis, some courts of appeals have held or implied that section 202.003(a)'s liberal-construction rule concerning residential covenants supersedes the common-law strict-construction rule entirely.[2] In contrast, other courts of appeals, including ours, have concluded that there is no discernable conflict between the common law and section 202.003(a).[3]

1. That an apparent contradiction might exist between the two standards for construction is demonstrated by each party's insistence in this appeal that a different rule of construction applies in construing the same language in the deed restrictions.

2. *See Village of Pheasant Run Homeowners Ass'n, Inc. v. Kastor*, 47 S.W.3d 747, 750–51 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) (after noting that section 202.003(a) constitutes statutory exception to strict-construction common-law rule, holding that restrictive covenant under review "falls within Section 202.003(a) and is unambiguous, therefore, we construe it liberally"); *Benard v. Humble*, 990 S.W.2d 929, 930–31 (Tex. App.-Beaumont 1999, pet. denied); *Candle-*

*light Hills Civic Ass'n, Inc. v. Goodwin*, 763 S.W.2d 474, 477, 480 (Tex.App.-Houston [14th Dist.] 1988, writ denied); *see also Highlands Mgmt. Co. v. First Interstate Bank of Tex., N.A.*, 956 S.W.2d 749, 752–53 (Tex.App.-Houston [14th Dist.] 1997, pet. denied) (citing holding of *Goodwin*, but then noting that *Highlands* court did not disagree with *Wilmoth's* statement of the strict-construction rule); *Herbert v. Polly Ranch Homeowners Ass'n*, 943 S.W.2d 906, 913 (Tex.App.-Houston [1st Dist.] 1996, no writ) (Wilson, J., dissenting on reh'g).

3. *See Reagan Nat'l Adver. of Austin, Inc. v. Capital Outdoors, Inc.*, 96 S.W.3d 490, 493 n. 2 (Tex.App.-Austin 2002, pet. denied); *Dyegard Land P'ship v. Hoover*, 39 S.W.3d 300,

Even courts in this latter (no-discernable-conflict) category differ in what conclusion they draw from their determination that no conflict exists between the construction rules of the common law and those of section 202.003(a). For example, some of these courts, including ours, have simply continued to apply the common-law strict-construction rules without a precise explanation of how the statutory and common-law construction rules interact without inconsistency.[4] In contrast, other courts of appeals have held that the common-law strict-construction rule applies only when there is an ambiguity concerning the drafter's intent; however, to determine if an ambiguity concerning the drafter's intent exists, these courts first apply section 202.003(a)'s liberal-construction mandate.[5] Of course, these two views of

how section 202.003(a)'s and the common law's construction rules interact can theoretically lead to different constructions of the same term, even if the term is ultimately found to be unambiguous. *See Pitman,* 937 S.W.2d at 517 (holding that contract is unambiguous as matter of law if, *after appropriate rules of construction have been applied,* contract can be given definite or certain legal meaning).

Finally, we note that some courts of appeals since 1987 have simply continued applying the common-law strict-construction rule without referring to section 202.003(a) at all;[6] others (including ours) have applied or referred to section 202.003(a)'s liberal-construction standard without referring to the common-law construction principles at all;[7] and still anoth-

---

309 (Tex.App.-Fort Worth 2001, no pet.); *Simon Prop. Group (Tex.) L.P. v. May Dep't Stores Co.,* 943 S.W.2d 64, 71 (Tex.App.-Corpus Christi 1997, no writ); *Ashcreek Homeowner's Ass'n, Inc. v. Smith,* 902 S.W.2d 586, 588–89 (Tex.App.-Houston [1st Dist.] 1995, no writ); *Crispin v. Paragon Homes, Inc.,* 888 S.W.2d 78, 81 n. 1 (Tex. App.-Houston [1st Dist.] 1994, writ denied); *see also Highlands Mgmt. Co.,* 956 S.W.2d at 752–53 (citing section 202.003(a)'s liberal-construction rule, but then noting that *Highlands* court did not disagree with *Wilmoth's* statement of the strict-construction rule); *Munson v. Milton,* 948 S.W.2d 813, 818 n. 1 (Tex.App.-San Antonio 1997, writ denied) (Duncan, J., dissenting).

4. *See Reagan Nat'l Adver.,* 96 S.W.3d at 493, 493 n. 2; *Dyegard,* 39 S.W.3d at 309; *Simon Prop. Group,* 943 S.W.2d at 71; *Crispin,* 888 S.W.2d at 81, 81 n. 1; *see also Munson,* 948 S.W.2d at 818, 818 n. 1 (Duncan, J., dissenting).

5. *See Munson,* 948 S.W.2d at 816; *Quinn v. Harris,* 1999 WL 125470 at *2, *2 n. 3 (Tex. App.-Austin Mar. 11, 1999, pet. denied) (not designated for publication) ("The Fourth Court of Appeals [in *Munson*] has employed both [section 202.003(a)'s liberal and the common law's strict] standards to review a restrictive covenant, finding that the covenant should be liberally construed to determine the framers' intent, and if there is any ambiguity

as to that intent, the covenant should then be strictly construed in favor of the free and unrestricted use of the premises. We believe the Fourth Court of Appeals has found the proper balance between the two standards that does not conflict with precedent or the Texas Property Code."); *see also Hodas v. Scenic Oaks Prop. Ass'n,* 21 S.W.3d 524, 528 (Tex.App.-San Antonio 2000, pet. denied) (after noting that section 202.003(a)'s construction standard applies to determine intent, also noting that strict-construction rule applies if covenant ambiguous).

6. *See Pebble Beach Prop. Owners' Ass'n v. Sherer,* 2 S.W.3d 283, 288 (Tex.App.-San Antonio 1999, pet. denied).

7. *See Truong v. City of Houston,* 99 S.W.3d 204, 214 (Tex. App.-Houston [1st Dist.] 2002, no pet.); *Brooks v. Northglen Ass'n,* 76 S.W.3d 162, 170 (Tex.App.-Texarkana 2002, pet. granted); *Am. Golf Corp. v. Colburn,* 65 S.W.3d 277, 280 (Tex.App.-Houston [14th Dist.] 2001, pet. denied); *Samms v. Autumn Run Cmty. Improvement Ass'n, Inc.,* 23 S.W.3d 398, 402 (Tex.App.-Houston [1st Dist.] 2000, pet. denied); *Bank United v. Greenway Improvement Ass'n,* 6 S.W.3d 705, 708 (Tex. App.-Houston [1st Dist.] 1999, pet. denied); *Boudreaux Civic Ass'n v. Cox,* 882 S.W.2d 543, 547 (Tex.App.-Houston [1st Dist.] 1994, no

er has referred to both standards together without discussing whether the standards do or do not conflict.[8]

The Supreme Court has noted, but not yet resolved, the potential conflict between the common-law and section–202.003(a) construction rules. *See Pilarcik,* 966 S.W.2d at 478; *see also Herbert,* 943 S.W.2d at 908 n. 2 (noting that Supreme Court's opinion in *Wilmoth*—which relied on common-law restrictive-covenant-construction rules and not on section 202.003(a)—issued soon after section 202.003(a)'s effective date, but that issue of whether section 202.003(a) changed the common-law construction rules was not raised or briefed in *Wilmoth* ). We respectfully urge the Supreme Court to resolve the differences among the courts of appeals on this issue. However, because we conclude that, under either a liberal or a strict construction of the original deed restrictions in this case, we would reach the same conclusion, we will continue to follow our holdings in *Ashcreek* and *Crispin*—that no discernable conflict exists between the common law and section 202.003(a)—without reconsidering the issue. *See Ashcreek Homeowner's Ass'n, Inc. v. Smith,* 902 S.W.2d 586, 588–89 (Tex.App.-Houston [1st Dist.] 1995, no writ); *Crispin v. Paragon Homes, Inc.,*

888 S.W.2d 78, 81, 81 n. 1 (Tex.App.-Houston [1st Dist.] 1994, writ denied).

## C. Expiration of the Deed Restrictions

In part of issue one in their appeal, the enforcing parties argue that the evidence is legally insufficient to show that the original deed restrictions expired by their own terms in January 2000.

Because they sought to enforce the original deed restrictions, the enforcing parties had the burden of proof, regardless of whether they were cast as plaintiffs or defendants, to show that the original restrictions were valid and enforceable, including showing that the restrictions had not expired by their own terms in January 2000. *See Dyegard Land P'ship,* 39 S.W.3d at 308; *McCart v. Cain,* 416 S.W.2d 463, 465–66 (Tex.Civ.App.-Fort Worth 1967, writ ref'd n.r.e.). Therefore, to prevail in their legal-sufficiency challenge, the enforcing parties must show that they conclusively established all vital facts in support of their claims. *See Francis,* 46 S.W.3d at 241. The only disputed, vital fact affecting the original deed restrictions' enforceability was whether the restrictions expired in January 2000.[9]

The trial court's pertinent fact finding is as follows:

---

writ); *Gettysburg Homeowners Ass'n, Inc. v. Olson,* 768 S.W.2d 369, 372 (Tex.App.-Houston [14th Dist.] 1989, no writ). We note that, in two of this Court's opinions in which we simply cited section 202.003(a)'s liberal-construction rule without mentioning the common-law strict-construction rule, the authors were the two justices who either had dissented or would dissent from our Court's seminal opinions holding that no conflict existed between the common-law strict-construction rule and the liberal-construction rule of section 202.003(a). *See Samms,* 23 S.W.3d at 402 (opinion authored by Justice O'Connor, who had dissented from *Crispin* ); *Boudreaux Civic Ass'n,* 882 S.W.2d at 547 (opinion authored by Justice Wilson, who had dissented from denial of rehearing in *Herbert* ); *see also*

*Herbert,* 943 S.W.2d at 907–08, 908 n. 2 (citing, in opinion authored by Justice O'Connor, section 202.003(a)'s liberal-construction standard and declining to resolve any conflict between that section's construction standard and that of common law).

8. *See Air Park–Dallas Zoning Cmte. v. Crow–Billingsley Airpark, Ltd.,* 109 S.W.3d 900, 909 (Tex.App.-Dallas 2003, no pet.).

9. Another disputed issue in this case was whether the original deed restrictions were validly amended in 1997. However, as will be discussed below, that issue was Gennedy's to prove, not the enforcing parties'.

4. The Restrictions applying to Pasadena River Oaks Subdivision, Harris County, Texas, expired and terminated by its [sic] own terms in January 2000. As of the date of the trial of this lawsuit, the Restrictions applying to Pasadena River Oaks Subdivision have not been extended or renewed....

The trial court's pertinent legal conclusions are as follows:

1. The [deed] Restrictions applying to Pasadena River Oaks Subdivision ... terminated and expired by its [sic] own terms in January 2000 and they are of no further force or effect, the same having never been renewed or extended.

. . .

4. As of the date of the trial of this lawsuit, there are no [deed] Restrictions in place lawfully applying to Pasadena River Oaks Subdivision, Harris County, Texas because the only Restrictions that ever applied to Pasadena River Oaks Subdivision expired and terminated by its [sic] own terms in January 2000.[10]

The trial court's findings and conclusions are based on the language of Section I of the deed restrictions:

TERMS OF RESTRICTIONS: These restrictions shall be *covenants running with the land* and shall be binding on all parties and persons owning any of the lots in said PASADENA RIVER OAKS, affected by these restrictions from the present time *until January,*

*2000.* The then owners of a majority of the lots affected by these restrictions ... may, by a written instrument executed and filed for record *not more than six (6) months prior to January, 2000, or any five (5) year period after January, 2000,* change these restrictions, covenants, and conditions in whole or in part as to all of said property, or as to any part thereof. The execution of said written instrument shall include acknowledgments thereof in the manner entitling the same to be placed of record, but said instruments need not all be under one covenant but may be of several different instruments.

(Emphasis added.)

▆▆▆▆ Although it is somewhat awkward, this language, regardless of whether we construe it liberally or restrictively, is nonetheless unambiguous that the restrictions were intended to continue beyond January 2000, subject to amendment in the prescribed manner. Gennedy focuses on the statement that the restrictions "shall be binding ... until January, 2000," but that statement cannot be read in a vacuum. The immediately following sentence qualifies the language upon which Gennedy relies: the later sentence allows amendment of the restrictions "not more than six (6) months prior to" either "January, 2000" or "*any five (5) year period after January, 2000.*" (Emphasis added.) The second sentence's providing for amendments every five years *after* January 2000 is rendered meaningless if the preceding sentence is construed to mean that the restrictions unilaterally expire *in*

---

10. We note that the trial court did not enter fact findings or legal conclusions on Gennedy's separate affirmative defense that the ACC had approved the construction of his fence. *See Martin v. Moore,* 562 S.W.2d 274, 278 (Tex.Civ.App.-Austin 1978, no writ) (holding that approval of architectural control committee was in nature of affirmative defense). Therefore, in our disposition, we may not consider this alternative defense or any evidence relating to it. *See* Tex.R. Civ. P. 299 ("The judgment may not be supported upon appeal by a presumed finding upon any ground of recovery or defense, no element of which has been included in the findings of fact....").

January 2000. On the other hand, reading the language "shall be binding ... until January, 2000" not as an expiration date, but as the date on which the restrictions may first be amended, harmonizes both sentences. "Wherever possible, a covenant should be construed to give effect to all of the provisions and to avoid rendering any provision meaningless." *Crispin*, 888 S.W.2d at 82.

Our interpretation is supported by other provisions in the deed restrictions. For example, the preamble states that the developer adopted the restrictions "for the purpose of creating and implementing a uniform plan for the development, improvement and sale" of the subdivision's property *"as a restricted, exclusive residential district ...."* (Emphasis added.) The restrictions were adopted and recorded in 1980. It is hardly conceivable that, given the express purpose of establishing a restricted and exclusive community, the developer then intended for the restrictions supporting that purpose to expire entirely in just under 20 years. Additionally, the deed restrictions contain 33 paragraphs of specific and sometimes detailed restrictions, plus provide for the ACC's mandatory approval of various building plans, including plans for remodeling of and alteration to a building, not just a building's initial construction.

 Gennedy first responds that, if the original deed restrictions did not expire by their own terms, they would perpetually burden the land in violation of Texas Constitution article I, section 26. *See* TEX. CONST. art. I, § 26. This argument was never presented to the trial court in any manner, however, and is thus not a basis for the judgment in the fact findings and legal conclusions. *See* TEX.R. CIV. P. 299 ("The judgment may not be supported upon appeal by a presumed finding upon any ground of recovery or

defense, no element of which has been included in the findings of fact...."). Gennedy also replies that it would be inequitable to require the removal of the fence because the ACC approved his plan in advance, because there was testimony that more than half of the subdivision's property owners whom the ACC committee had contacted before it ruled had "approved" Gennedy's requested variation, and because appellant Ridgway was concerned about the fence only because it violated the restrictions, not because it affected him personally. Again, this equity ground (and also any argument having to do with the ACC's approval) is not a basis stated in the fact findings and legal conclusions. *See* TEX.R. CIV. P. 299.

We hold that the original deed restrictions were clearly not intended to expire in January 2000. Accordingly, we further hold that the enforcing parties conclusively established, through the restrictions' plain language, that the original deed restrictions were valid and enforceable. We thus sustain the enforcing parties' challenge to fact finding four and legal conclusions one and four. Because of these holdings, we need not reach the enforcing parties' factual-sufficiency challenge under issue one.

We sustain the enforcing parties' issue one.

### D. Amendment of the Deed Restrictions

 In part of issue two in their appeal, the enforcing parties argue that the evidence is legally insufficient to show that the deed restrictions were validly amended in 1997.

 Amendment or modification of a restrictive covenant is an affirmative defense. *See Dyegard Land P'ship*, 39 S.W.3d at 308; *see also Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex.1984)

(holding that contractual modification is affirmative defense). Gennedy thus had the burden of proof to show the validity and enforceability of the amended restriction. *See Dyegard Land P'ship*, 39 S.W.3d at 308. Accordingly, to prevail in their legal-sufficiency challenge, the enforcing parties must show that there is no evidence to support the relevant finding. *See Love*, 982 S.W.2d at 943–44.

The trial court's pertinent fact finding is as follows:

3. Until January 2000, [deed] Restrictions applying to Pasadena River Oaks Subdivision governed in part the placement and construction of improvements upon lots located within Pasadena River Oaks Subdivision. . . . The [deed] Restrictions were modified and amended by document filed March 25, 1997. . . .

The trial court's pertinent legal conclusions are as follows:

2. The [deed] Restrictions applying to Pasadena River Oaks Subdivision were modified and amended lawfully by that certain Modification and Amendment to Restrictions dated March 18, 1997. . . .

3. The Modification and Amendment to Restrictions lawfully allowed GURGES GENNEDY to maintain the improvements construed [sic] upon his lot in Pasadena River Oaks Subdivision as the same were located at the time of this lawsuit. . . .

A developer generally has the unilateral right to impose on its subdivision, in the first instance, any restrictions that it chooses, to alter or to cancel restrictions, or to abrogate restrictions entirely, so long as no subdivision lots have been sold. *Dyegard Land P'ship*, 39 S.W.3d at 313. After any of the subdivision's lots has been sold, the developer's power to amend the deed restrictions may nonethe-

less continue if the dedicating instrument grants the developer the right to amend the restrictions and establishes a method of doing so. *See id.* If a developer exercises the power to amend that the dedicating instrument grants the developer, however, any amendment that the developer makes must be in the exact manner that the dedication provides. *Id.; see Norwood v. Davis*, 345 S.W.2d 944, 948 (Tex.Civ. App.-Austin 1961, no writ). Furthermore, any amendment to a restrictive covenant must not be illegal or against public policy. *Dyegard Land P'ship*, 39 S.W.3d at 313; *Miller v. Sandvick*, 921 S.W.2d 517, 521 (Tex.App.-Amarillo 1996, writ denied).

In accordance with this public-policy limitation, a developer's contractual, unilateral right to amend, to alter, or to annul the restrictive covenants that it created—although generally recognized as a valid right under Texas law—continues only as long as the developer retains ownership in property within the subdivision. *See Dyegard Land P'ship*, 39 S.W.3d at 314–15; *Norwood*, 345 S.W.2d at 950–51 (Hughes, J., concurring) (expressing view that right to amend expired when developer divested itself of all ownership in property and citing general rule that covenant attached to estate cannot endure beyond estate's termination). The rationale behind limiting a developer's unilateral right in this way is that, "so long as the developer has an interest in the subdivision, his own economic interest will tend to cause him to exercise his right in a manner which will take into account harm to other lots in the subdivision. Thus, there is 'some economic restraint' against arbitrary action that is lacking once he has divested himself of all interest." *Dyegard Land P'ship*, 39 S.W.3d at 315.

The developer, Columbian Village Corporation ("Columbian"), executed and filed

the original deed restrictions in 1980. The only applicable deed-restriction provision concerning amendment is the following:[11]

VI.

MODIFICATIONS—AMEND-MENTS

■■ *The undersigned* shall have and hereby reserves the right to modify and amend these restrictions, conditions and covenants with reference to location or setback of any of the improvements within the subdivision and the direction which the same shall face to such extent *as it deems* for the best interests of the subdivision as a whole. Such modifications and amendments, if any, shall be in writing.

/s/

Hugo A. Ramirez, M.D.—*President*

*COLUMBIAN VILLAGE CORPO-RATION*[12]

(Emphasis added.)

The subdivision contained 20 lots. It was undisputed that, at all times relevant to this suit, at least some of these lots had been sold. In 1989, Columbian dissolved. The record does not show the reason for the dissolution. In conjunction with its dissolution, Columbian assigned its modification rights by corporate resolution to Dr. Ramirez personally.[13] It is undisputed that the deed restrictions did not expressly state whether Columbian could assign its amendment rights under Section VI.

In March 1997, after the lawsuit's filing, and pursuant to Section VI of the deed restrictions, Dr. Ramirez executed an instrument entitled "Modification and Amendment of Deed Restrictions." The 1997 amendment purported to change Section II, Paragraph 19 of the original deed restrictions by adding the italicized language to it:

19. No wall or fence of any character shall be erected nearer to the front lot line than 40 feet therefrom, *except that a fence or wall may be erected on [Gennedy's lot] within 25 feet of the front (west) line of said lot;* and no fence or wall shall exceed 8 feet in height. Barbed wire and mesh or net fencing are pro-

---

11. The deed restrictions also allowed amendment by "[t]he then owners of a majority of the lots affected by these restrictions ... by a written instrument executed and filed for record not more than six (6) months prior to January, 2000, or any five (5) year period after January, 2000...." It was undisputed that this provision was not the one under which the 1997 amendment was made.

12. Contrary to Gennedy's claim, it is clear that Dr. Ramirez signed the original deed restrictions in his corporate capacity, as president of Columbian, and not in his individual capacity. That he did so in his corporate capacity is evidenced by (1) the signature line, which sets out Dr. Ramirez's corporate capacity; (2) the introductory paragraph of the deed restrictions, which states that Columbian (not Dr. Ramirez) was adopting and establishing the restrictions; and (3) from the use of the pronoun "it"—rather than "he"—in Section VI to refer to "the undersigned" to whom the modification rights are given.

Moreover, Dr. Ramirez testified that he signed the deed restrictions as Columbia's president. Given the original deed restrictions' clear indication of Dr. Ramirez's capacity, it is irrelevant, contrary to Gennedy's argument, that the notary's jurat in the affidavit attached to the restrictions did not mention in what capacity Dr. Ramirez signed.

13. In their reply brief, the enforcing parties state that the trial court erred in admitting a copy of the corporate resolution that purportedly assigned Dr. Ramirez Columbia's amendment right because the document is hearsay, is irrelevant, violates the parol-evidence rule, and calls for speculation. However, the enforcing parties do not assign error to this ruling, and they set out no argument or authority in support. *See Walling v. Metcalfe,* 863 S.W.2d 56, 58 (Tex.1993) (holding that court of appeals generally cannot reverse for reason that is not assigned as error on appeal); *see also* Tex.R.App. P. 38.1(h).

hibited, unless such be galvanized chain link.

(Emphasis added.) The amendment was filed of record the same month.

For purposes of our discussion, we assume without deciding that Columbian could validly assign its amendment rights under Section VI and that Dr. Ramirez could validly amend the restrictions with respect to only one lot in the subdivision. Nonetheless, as the enforcing parties argue, a developer (or its assignee, under our assumption) may exercise the reserved, unilateral right to amend or to revoke restrictive covenants only as long as the developer (or its assignee) retains some ownership in property within the subdivision. *Dyegard Land P'ship*, 39 S.W.3d at 314–15. Therefore, it was Gennedy's burden to show that Columbian or Dr. Ramirez retained some ownership interest in the subdivision's property when the 1997 amendment was executed. Gennedy produced no evidence showing this, despite the enforcing parties' having raised the issue below and the trial court's having acknowledged their position and having reserved ruling on it. Additionally, although it was not their burden to do so, the enforcing parties presented undisputed evidence that (1) Columbian dissolved in 1989 and no longer existed when the 1997 amendment was executed; (2) Columbian distributed among its shareholders all remaining property and assets as of the date of dissolution, so that Columbian thereafter owned no subdivision property; and (3) Dr. Ramirez had not personally owned any property in the subdivision since 1989. Therefore, not only did Gennedy fail to produce any evidence that someone with

the potential power to amend the restrictions had an ownership interest in the subdivisions's land at the time of the amendment, but the enforcing parties conclusively proved that no one with the potential power to modify the restrictions had any such ownership interest. Accordingly, Gennedy produced no evidence of an essential element of his affirmative defense of amendment. *See Dyegard Land P'ship*, 39 S.W.3d at 308, 314–15 (holding that summary judgment party asserting affirmative defense of restrictive covenant's amendment has burden to raise fact issue on each element of affirmative defense; also holding that developer can unilaterally amend restrictive covenant only as long as developer holds some interest in subdivision's land).

We sustain the enforcing parties' challenge to fact finding three, their challenge to legal conclusions two and three, and their issue two. We thus need not reach their remaining arguments under their issue two.

Because we have sustained the enforcing parties' issues one and two, we sustain their issue three, in which they argue that the trial court erred in not ordering Gennedy to move his fence to the set-back line in the original deed restrictions because his fence undisputedly did not comply with that provision.

### Attorney's Fees

In issue four in their appeal, the enforcing parties argue that the trial court erred in denying their request for attorney's fees because the Property Code requires such an award.[14] In the sole

---

14. In their "live" pleadings, the enforcing parties sought to enforce the original deed restrictions under the Property Code and also sought to have the 1997 amendment's invalidity declared under the Declaratory Judgments

Act ("DJA"). *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 37.001–.011 (Vernon 1997 & Supp. 2004). They requested attorney's fees in both pleadings, and in their post-judgment motion, without specifying whether they sought fees

issue in his appeal, Gennedy argues that the trial court erred in denying him reasonable attorney's fees under the Property Code or under the Declaratory Judgments Act ("DJA").[15] In response to these attorney's fees challenges, neither party argues that the other party's evidence of reasonableness or necessity of fees was insufficient; rather, each party argues that the other was not entitled to fees as a matter of law under the applicable statutes.

The Property Code requires a trial court to award reasonable attorney's fees to a prevailing party "who asserted the action" in a suit based on the breach of a restrictive covenant pertaining to real property. TEX. PROP.CODE ANN. § 5.006. One defending such a suit is not entitled to attorney's fees under section 5.006. *See id.* § 5.006(a); *Pebble Beach Prop. Owners' Ass'n v. Sherer*, 2 S.W.3d 283, 291–92 (Tex.App.-San Antonio 1999, pet. denied). The DJA allows the trial court to award reasonable and necessary attorney's fees as are equitable and just. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997). The DJA "entrusts attorney fee awards to the trial court's sound discretion, subject to the requirements that any fees awarded be reasonable and necessary, which are matters of fact, and to the additional requirements that fees be equitable and just, which are matters of law." *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). "Unreasonable fees cannot be awarded [under the DJA], even if the court believed them just, but the court may conclude that it is not equitable or just to award even reasonable and necessary fees." *Id.* A party need not prevail to be awarded attorney's fees under the DJA. *Hunt v. Baldwin*, 68 S.W.3d 117, 135 (Tex. App.-Houston [14th Dist.] 2001, no pet.).

The enforcing parties argue on appeal that they were entitled to attorney's fees under section 5.006. However, that provision requires the trial court to award fees to the prevailing party. *See* TEX. PROP. CODE ANN. § 5.006(a). Here, Gennedy was the prevailing party below, but he was the defendant in the enforcing parties' suit to enforce the deed restrictions, not the one "who asserted the action," and he asserted only DJA counterclaims. *See id.; Sherer*, 2 S.W.3d at 291–92. Moreover, he did not plead for or request that fees be awarded him under the Property Code, but only under the DJA. *See* TEX.R.APP. P. 33.1(a)(1).

We have already determined that we must reverse the trial court's judgment to the extent that the judgment concerned the validity of the deed restrictions, their attempted amendment, and their violation, and we are remanding the cause with instructions in this regard. Because the award of attorney's fees depends on matters (*e.g.*, who prevails, what is equitable and just) to which the disposition on remand may be relevant, we decline to reach any party's arguments concerning attorney's fees, but will instead allow the trial court to reconsider the award of attorney's fees upon remand. Accordingly, we do not reach the enforcing parties' issue four in their appeal or Gennedy's sole issue in his

---

under the Property Code or under the DJA. At trial, the enforcing parties' attorney cited the Property Code as the basis for fees. On appeal, they have limited their concerning attorney's fees to the Property Code alone.

**15.** Gennedy's counter-petition did not specify under what law he sought attorney's fees, but his only cause of action was under the DJA, and at trial, he cited only the DJA as a basis for fees. Therefore, Gennedy did not preserve his complaint that the trial court erred in declining to award him attorney's fees under the Property Code. *See* TEX.R.APP. P. 33.1(a)(1).

appeal.[16]

## Conclusion

We reverse the judgment of the trial court and remand the cause with instructions for the trial court (1) to render appropriate declaratory judgment, consistent with this opinion, that the original deed restrictions have not expired by their own terms and continue in effect, that the March 1997 amendment of the original deed restrictions was invalid, and that Gennedy's fence thus violates the set-back provisions of the original deed restrictions; (2) to grant any relief, injunctive or otherwise, that was already pleaded by the parties at the time of the January 10, 2001 judgment and that is appropriate to the declarations ordered in (1), above; and (3) to consider the parties' claims for attorney's fees on any basis that the law allows or requires and that the parties had already pleaded at the time of the January 10, 2001 judgment.

**16.** We note that we are not implying, by remanding the cause with these instructions concerning attorney's fees, any opinion on the enforcing parties' argument that Gennedy cannot collect attorney's fees under his DJA counterclaim because his counterclaim was allegedly a mere restatement of their affirmative enforcement claims. We simply do not reach this or any other argument concerning fees.