Opinion issued February 21, 2008






 

 







In The

Court of Appeals

For The

First District of Texas






NO. 01-05-00827-CV

 __________



CYPRESS NORTHWEST ASSOCIATES, LTD., Appellant


V.


WAYNE DUDDLESTEN, LTD. AND BC ALLIANCE, INC., Appellees







On Appeal from the 127th District Court

Harris County, Texas

Trial Court Cause No. 2004-07190






MEMORANDUM OPINION ON REHEARING

 We withdraw our opinion and judgment issued on December 20, 2007 and
issue the following in their stead. Appellees' motion for rehearing is denied.

 The trial court granted Wayne Duddlesten, Ltd. and BC Alliance, Inc.'s
(collectively "Duddlesten") motion for partial summary judgment on liability only
and held that Cypress Northwest Associates, Ltd. ("Cypress") breached its contract
with Duddlesten. A jury determined the consequential damages for the breach to be
$1,110,000. Cypress argues that (1) the trial court erred in finding Cypress liable for
breach of contract because there is no evidence that Cypress failed to comply with 
the contract, (2) the trial court improperly imposed two implied obligations upon
Cypress, and (3) the trial court erred in failing to find that Duddlesten's breach of
contract claim was barred by the four-year statute of limitations. We reverse and
render in part and reverse and remand in part. 

Background (1)


 Cypress and Duddlesten are real estate developers who own adjoining property
along Barker Cypress Road near Highway 290 in northwest Harris County. Cypress
is the developer of Riata Ranch, a 1,000-home residential subdivision. Duddlesten
owns commercial property that lies between Riata Ranch and Barker Cypress Road. 
 In March 1996, the parties entered into a Residential Development Agreement
("Development Agreement") related to the expansion of Riata Ranch. In the
Development Agreement, for $271,772, Duddlesten conveyed a 21.9760-acre tract
to Cypress. The north line of the tract was determined to be the south line of "a
certain tract owned by Duddlesten." Duddlesten also agreed to dedicate a 100-foot
easement across its property. The second paragraph of the Development Agreement
concerns the dedication of the easement and states the following:

2. Additional Road Right of Way. Riata Ranch subdivision is to be
accessed by three roads originating at Barker Cypress Road. The
northernmost such entry road wholly traverses property owned by
Duddlesten. Duddlesten has agreed, and by this Agreement further
confirms and agrees to dedicate a one hundred foot (100') wide
easement, sixty feet (60') of which shall be at no expense to Cypress,
and the remaining portion of which shall be at a cost to Cypress of an
amount equal to $12,000 per acre for the acreage, as determined by a
surveyor, in excess of the easement property located within the sixty
foot (60') portion dedicated at no cost to Cypress. The parties agree that
Duddlesten shall have authority to make the final determination as to the
location of the right of way, subject to approval by the City of Houston
Planning Commission. This purchase shall be accomplished within a
four year period of the date hereof. All costs of this purchase and/or
dedication shall be borne by Cypress provided, however, that the exact
location of said easement shall be fixed by Cypress within two years
from the date hereof. Duddlesten retains the right to approve the final
geometric design of this easement as well as the easement for Riata
Ranch Drive as shown on Exhibit "A", prior to recording any plat
covering either the easement or roadway.


(Emphasis added.) Three months later, rather than dedicate an easement as
contemplated by the Development Agreement, Duddlesten executed a deed ("the
Duddlesten Deed") conveying 1.0265 acres ("the Deeded Strip") to Cypress. The
Duddlesten Deed conveyed all right, title and interest, if any, in and to 

 (d) any easements, rights-of-way, rights of ingress and egress or other
interests in, on, or to any land, highway, street, road or avenue, open or
proposed in, on, across from, in front of, abutting, adjoining or
otherwise appurtenant to [the Deeded Strip], as well as all rights,
privileges and appurtenances owned by [Duddlesten] and in any way
related to [the Deeded Strip] and other rights and interest of
[Duddlesten] hereunder conveyed; provided, however, that such
conveyance is without prejudice to, and does not transfer, any rights or
benefits held by [Duddlesten], its successors and assigns to the extent
they benefit any other properties owned by [Duddlesten] to which such
rights are appurtenant . . . . 


The Duddlesten Deed included a restrictive covenant ("the Restrictive Covenant") 


limiting the acceptable uses of the land. The Restrictive Covenant states:


The use of [the Deeded Strip] is hereby restricted to use as a roadway or
road of [sic] right-of-way to provide vehicular access, ingress and egress
to and from Barker Cypress Road to and from adjacent real property
currently owned by [Cypress], for landscaping and other similar uses
incidental to and associated with use as a roadway or road right-of-way,
and for the additional purpose of the construction, installation, use,
operation, maintenance, repair and replacement of underground public
utility lines, including, but not limited to water, sanitary sewer, storm
sewer, electricity and telephone.


At the time the parties entered into the Development Agreement, Cypress was
planning for the construction of a school near the intersection of Barker Cypress
Road and Cypress-North Houston Road. It sought an additional access road in order
to facilitate traffic around the proposed school. Duddlesten agreed because it
believed the property would be more valuable if it was divided into two corner
commercial lots by a road leading into the neighborhood. The plans to build the
school later were abandoned. 

 Cypress has not built a road across the Deeded Strip, claiming that neither the
Development Agreement nor the Restrictive Covenant impose any obligation upon
it to construct such a road. On March 12, 2001, Cypress executed a final plat of the
Riata Ranch subdivision that did not include an access road across the Deeded Strip. 
Instead, the tract was platted as "Restricted Reserve 'C' Restricted to U.E. STM. S.E.
& Landscaping." The plat also showed a cul-de-sac abutting the Deeded Strip,
which would prevent a roadway on the Deeded Strip from accessing the Riata Ranch
subdivision. 

 Duddlesten filed suit on February 13, 2004, claiming that Cypress breached
the express terms and implied obligations contained in the Development Agreement
and the Restrictive Covenant by failing to construct a road across the Deeded Strip. 
Both parties moved for summary judgment on the issue of liability. The trial court
granted Duddlesten's motion and denied Cypress's motion. 

 The case proceeded to trial solely on the issue of damages. The trial court
instructed the jury that Duddlesten "was entitled to have an entry road cross the
commercial property in question into Riata Ranch" and asked that the jury determine
"the difference between the market value of the commercial property having an entry
road into Riata Ranch Subdivision that crosses the property owned by [Duddlesten]
and the market value of that commercial property without an entry road." (Emphasis
added.) The jury awarded Duddlesten $1,110,000 in damages. Cypress appeals the
trial court's order granting Duddlesten's motion for summary judgment. 

Summary Judgment


 Our review of a trial court's decision to grant summary judgment is de novo. 
Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005). In a traditional
summary judgment motion, the movant must show that there is no genuine issue of
material fact and that he is entitled to judgment as a matter of law. Tex. R. Civ. P.
166a(c); Pustejovsky v. Rapid-Am. Corp., 35 S.W.3d 643, 645-46 (Tex. 2000). In
deciding whether a disputed material fact issue precludes summary judgment, we
take evidence favorable to the nonmovant as true, and indulge every reasonable
inference and resolve any doubts in favor of the nonmovant. Provident Life & Accid.
Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003). When, as here, the trial court
does not specify the grounds upon which it ruled, the summary judgment may be
affirmed if any of the grounds stated in the motion is meritorious. W. Invs., Inc. v.
Urena, 162 S.W.3d 547, 550 (Tex. 2005); Mayes v. Goodyear Tire & Rubber Co.,
144 S.W.3d 50, 55 (Tex. App.--Houston [1st Dist.] 2004, no pet.). When, as here,
competing motions for summary judgment are filed, and one is granted and the other
denied, the reviewing court must review the summary judgment evidence presented
by both sides and determine all questions presented. Comm'rs Court of Titus County
v. Agan, 940 S.W.2d 77, 81 (Tex. 1997). 

 The standard of review for interpreting an unambiguous contract is de novo. 
MCI Telecomms. Corp. v. Tex. Utils. Elec. Co., 995 S.W.2d 647, 650-51 (Tex.
1999); Atlantic Lloyds Ins. Co. v. Butler, 137 S.W.3d 199, 209 (Tex. App.--Houston
[1st Dist.] 2004, pet. denied). Whether a contract is ambiguous is a question of law
that is also reviewed de novo. Butler, 137 S.W.3d at 209. 

 Breach of Contract


 In issue one, Cypress contends that the trial court erred in finding Cypress
liable for breach of contract because there is no evidence that it failed to comply with
any express provision of the Development Agreement. Cypress further complains
that the Duddlesten Deed's restrictive covenant imposes no affirmative obligation
on Cypress, and there is no evidence that Cypress violated the Deed's restrictive
covenant. In issue two, Cypress asserts that the trial court erred by "improperly
imposing two 'implied' obligations on Cypress that are not contained in or supported
by the language of the Development Agreement." The two "implied" obligations are
that (1) Cypress must construct a road on the Deeded Strip and (2) Cypress must
grant an easement across its land and construct a road on it as an extension of the
Deeded Strip roadway. Cypress contends that the trial court erred in concluding that
the Development Agreement requires Cypress to construct a roadway on the Deeded
Strip.

 The law concerning contract interpretation is well-settled. Id. When
construing a written contract, our primary concern is to give effect to the true intent
of the parties as expressed in the instrument. Forbau v. Aetna Life Ins. Co., 876
S.W.2d 132, 133 (Tex. 1994). If a written contract is worded in such a way that it
can be given a definite legal meaning, then the contract is not ambiguous. Nat'l
Union Fire Ins. Co. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995). If the
contract is unambiguous, the court must enforce the contract as written. Transcon.
Gas Pipeline Corp. v. Texaco, Inc., 35 S.W.3d 658, 665 (Tex. App.--Houston [1st
Dist.] 2000, pet. denied). 

 To prevail on a breach of contract claim, Duddlesten was required to prove (1)
a valid enforceable contract, (2) Duddlesten and Cypress signed the contract or were
in privity with a contract signatory, (3) Duddlesten performed its contractual
obligations, (2) (4) Cypress breached its contract, and (5) Cypress's breach caused
Duddlesten's injury. See Valero Mktg. & Supply Co. v. Kalama Int'l, 51 S.W.3d
345, 351 (Tex. App.--Houston [1st Dist.] 2001, no pet.). It is uncontested that there
was a valid contract. The real question is whether Cypress breached either the Right
of Way provision of the Development Agreement or the Deed's restrictive covenant.

Deed v. Easement

 The Development Agreement: Additional Right of Way provision, by its
express terms, contemplates the creation and existence of an easement on property
owned by Duddlesten. However, Duddlesten, extra-contractually, opted to deed the
property instead of dedicating an easement. Consequently, Duddlesten no longer
owns the property and, pursuant to the express language of the deed, has no "right,
title [or] interest" to the property beyond what is found in the Restrictive Covenant. 
Simply put, the Additional Right of Way provision does not create any obligations
with respect to property owned by Cypress--including the Deeded Strip. It only
creates obligations with respect to property owned by Duddlesten. Therefore, the
provision in the Development Agreement relied upon by Duddlesten for its breach
of contract claim does not apply to the use of the deeded property at issue in this
lawsuit. 

 Duddlesten nevertheless argues that we should read the language of the Right
of Way provision piecemeal, ignoring the language referencing the creation and
existence of an easement on Duddlesten's property, to find an obligation on the part
of Cypress to allow access across the Deeded Strip. Specifically, Duddlesten argues
that the first two sentences in the provision, along with the provision's reference to
a "right of way," creates this obligation to provide access. We disagree. To read the
provision piecemeal as Duddlesten suggests would require us to ignore that the
provision contemplates the creation and existence of an easement. Here, Duddlesten
chose to deed the property instead of grant an easement. 

 Duddlesten deeded the property contemplated by the easement to Cypress
within months of creating the Development Agreement, and Duddlesten does not
complain that Cypress failed to comply with its corresponding financial obligations
under the contract. As mentioned above, instead of dedicating the roadway easement
as required by the contract, Duddlesten deeded land according to its own
specifications as to the size and shape of the tract. Consequently, we hold that,
contrary to the trial court's finding, Cypress did not breach the Development
Agreement, and the trial court erred in concluding that the Development Agreement
required Cypress to construct a roadway on the Deeded Strip. 

 We next turn to examine whether Cypress' conduct breached the Deed's
restrictive covenant. 

Restrictive Covenant

 Cypress asserts that there is no evidence that it violated the Duddlesten Deed's
restrictive covenant, which imposes no affirmative obligation on Cypress. The parties
dispute the meaning of the Restrictive Covenant imposed by Duddlesten upon the
Deeded Strip when it conveyed the land to Cypress. Duddlesten contends that
Cypress violated the Restrictive Covenant when it caused the final plat for Section
10 of Riata Ranch to be recorded in May 2001. The plat showed a cul-de-sac at the
end of Riata Ranch Road, blocking access to the subdivision through the Deeded
Strip. Duddlesten argues that, in violation of the Restrictive Covenant, the cul-de-sac has prevented the future use of the Deeded Strip as a roadway. 

 In addition, the subdivision plat shows an arrow pointed at the Deeded Strip,
next to which is written, "RESTRICTED RESERVE "C" RESTRICTED TO U.E.,
STM. S.E. & LANDSCAPING." This language provides that Cypress plans utility
and storm easements across the Deeded Strip, as well as landscaping. Duddlesten
contends that these uses violate the Restrictive Covenant. Cypress has argued that
the Restrictive Covenant does not bar this activity because Cypress is not using the
property, which has been left as open space. 

 Restrictive covenants are subject to the same general rules of construction as
contracts. Pilarcik v. Emmons, 966 S.W.2d 474, 478 (Tex. 1998). Like a contract,
a restrictive covenant is unambiguous if it can be given a certain or definite legal
meaning. Id. Whether restrictive covenants are ambiguous is a matter of law for the
court to decide. City of Pasadena v. Gennedy, 125 S.W.3d 687, 692 (Tex.
App.--Houston [1st Dist.] 2003, pet. denied). At common law, covenants restricting
the free use of land are not favored, but will still be enforced when they are confined
to a lawful purpose and are clearly worded. Id. at 693. All doubts concerning a
restrictive covenant's terms are resolved in favor of the free and unrestricted use of
the land, and any ambiguity must be strictly construed against the party seeking to
enforce the covenant. Id. The Texas Property Code states that "[a] restrictive
covenant shall be liberally construed to give effect to its purposes and intent." Tex.
Prop. Code Ann. § 202.003(a) (Vernon 2007). In Gennedy, we noted the potential
conflict in the common law and statutory law, but do not intend to resolve this
potential conflict in this case for the same reasons that we did not do so in Gennedy. 
See Gennedy, 125 S.W.3d at 695. 

 Regardless of whether we subject the Restrictive Covenant to a liberal or strict
construction, the outcome remains the same. The plain language reveals that the
parties intended that Cypress would not use the property for any other purpose than
as "a roadway or road of [sic] right-of-way to provide vehicular access, . . .
landscaping and other similar uses incidental to and associated with uses as a
roadway or road right-of-way . . . ."

 We agree with Cypress that the Restrictive Covenant does not obligate Cypress
to do anything with its own land. A lease provision that says the premises are only
to be used for a particular purpose does not obligate "the lessee to use or continue to
use the premises for that purpose; such a provision is a covenant against a
noncomplying use, not a covenant to use." Universal Health Servs., Inc. v.
Renaissance Women's Group, P.A., 121 S.W.3d 742, 747 (Tex. 2003). 

 Similarly, the Restrictive Covenant limits use of the Deeded Strip. Cypress
indicated on the subdivision plat that the Strip could be used for landscaping, utility,
and storm easements. Cypress has thus allowed for the possibility that these
easements could be used in ways which could potentially interfere with the restrictive
covenant, but it is unclear from the summary judgment record whether Cypress
actually has used the land for any noncomplying purpose in violation of the covenant. 
The filing of the plat, in and of itself, does not constitute a breach of the Restrictive
Covenant, as the plat alone does not indicate that Cypress has used the Deeded Strip
in any way that violates the covenant.

 The summary judgment record reveals, however, that the land has been or is
currently being landscaped, though it is unclear what sort of alterations have been
made. Landscaping does not violate the Restrictive Covenant per se, but it may be
if the landscaping on the Deeded Strip interferes with the land's potential use as a
roadway. Without evidence regarding the nature and scope of the landscaping on the
Deeded Strip, it nevertheless cannot be determined whether Cypress has violated the
terms of the Restrictive Covenant. Thus, whether Cypress has violated the Restrictive
Covenant presents a question of fact that we cannot resolve on the summary judgment
record before us. 

 Because a fact question exists regarding the nature and scope of use of the
Deeded Strip, the trial court erred in finding, as a matter of law, that Cypress breached
the restrictive covenant.

 We sustain issue one.

Implied Obligations

 In issue two, Cypress asserts that the trial court erred by "improperly imposing
two 'implied' obligations on Cypress that are not contained in or supported by the
language of the Development Agreement." The two "implied" obligations are that
(1) Cypress must construct a road on the Deeded Strip and (2) Cypress must grant an
easement across its land and construct a road on it as an extension of the Deeded Strip
roadway. 

 The trial court instructed the jury, and thus found as a matter of law, that
Duddlesten "was entitled to have an entry road cross the commercial property (3) in
question into Riata Ranch Subdivision at the time the Plat was filed in May 2001 [the
contract] and that such Plat failed to include such entry road [the breach]." 
(Emphasis added.) The charge further asked that the jury determine "the difference
between the market value of the commercial property having an entry road into Riata
Ranch Subdivision that crosses the property owned by [Duddlesten] and the market
value of that commercial property without an entry road." (Emphasis added.) 

 In moving for summary judgment in the trial court, Duddlesten claimed that
"there was clearly an implied obligation on Cypress to construct the street." On
appeal, Duddlesten now concedes that "Cypress is correct that the Residential
Development Agreement does not require Cypress to actually build a road . . . . In
other words, Cypress was not obligated to construct the road, but it was obligated to
provide access to the subdivision by a road." "For that reason, Duddlesten[, on
appeal, addressed] only Cypress's argument that it had no implied obligation to grant
an easement across its property." Though the Development Agreement makes no
mention of such an obligation, Duddlesten argues that access to the Riata Ranch
subdivision would be impossible without the construction of a road traversing both
Duddlesten's and Cypress's property and would thus create a "road to nowhere." 
Duddlesten, however, has deeded the property and retained no "right, title [or]
interest" in it.

 Implied covenants are not favored by law and will only be read into a contract 
when necessary to give effect to the plain, unmistakable intent of the parties. In re
Bass, 113 S.W.3d 735, 743 (Tex. 2003). An implied covenant must appear to be so
clearly within the contemplation of the parties that they deemed it unnecessary to
express it in writing. Danciger Oil & Ref. Co. v. Powell, 154 S.W.2d 632, 635 (Tex.
1941). It is not enough to say that an implied covenant is necessary in order to make
the contract fair or that without such a covenant the contract would operate unjustly. 
Id. An implied covenant must arise from the presumed intention of the parties as
gathered from the agreement as a whole. Id.

 Duddlesten asks this Court to impose an unwritten, "implied" obligation on
Cypress that, if actually agreed to by the parties, would have been barred by the
statute of frauds. An easement is an interest in land to which the statute of frauds
applies, and any grant of an easement must be in writing. Cummins v. Travis County
Water Control & Improvement Dist. No. 17, 175 S.W.3d 34, 51 (Tex. App.--Austin
2005, pet. denied). The easement which Duddlesten promised to grant is one which
attaches to the land itself and passes with it, and thus, is an easement appurtenant to
the land. See Drye v. Eagle Rock Ranch, Inc., 364 S.W.2d 196, 203 (Tex. 1962). As
such, it is an interest in land which requires a writing to create or transfer. See Tex.
Prop. Code Ann. § 5.021 (Vernon 2004); Drye, 364 S.W.2d at 203. (4)

 The Development Agreement contains no mention of Cypress's property, no
requirement that a roadway would even be built on the Deeded Strip, and no
statement of Duddlesten's alleged intent that its easement, and ultimately deeded
property was "to create two, more valuable corner commercial lots," a goal that could
only be accomplished with an additional easement across Cypress's land. 
Accordingly, there is no evidence to support the trial court's implied finding that
Cypress must create an easement over its property as a matter of law, and the trial
court erred in submitting an instruction containing an implied finding to the jury
based on a breach of the Development Agreement.

 We sustain issue two.


Statute of Limitations

 In issue three, Cypress argues that Duddlesten's breach of contract claim was
barred by the four-year statute of limitations because either (1) the discovery rule
does not apply to Duddlesten's claim or, (2) if the discovery rule does apply,
Duddlesten had actual notice of Cypress's intentions more than four years before it
filed suit. 

Standard of Review 

 The determination of whether the statute of limitations has run on a particular
cause of action is a question of law that we also review de novo. See Knott, 128
S.W.3d at 221. As a general rule, a cause of action begins to run when facts come
into existence that authorize a party to seek a judicial remedy. Id. A breach of
contract claim accrues when the contract is breached. Stine v. Stewart, 80 S.W.3d
586, 592 (Tex. 2002). 

Analysis

 Cypress first argues that Duddlesten should have been aware of the facts that
led to its breach of contract claim in September of 1999, when Cypress filed a
development plat with the City of Houston that did not include an access road
through the Deeded Strip. But, as Duddlesten points out, this plat was preliminary
and subject to change. Cypress further argues that, after a meeting on February 11,
2000, Duddlesten either knew or should have known about Cypress's plans not to
construct a road through the Deeded Strip. At the meeting, Cypress showed
Duddlesten documents from the City of Houston Planning Commission, including a
development plat that showed the Deeded Strip not being used as an access road. 
Duddlesten contends that he did not discuss the access road at the meeting in
February because the meeting centered on property west of Barker Cypress Road. He
claims that Cypress intentionally drew his attention away from the access road by
displaying the property west of Barker Cypress Road in color and the rest of the
property in black-and-white. Duddlesten asserts that "Cypress breached the
[Development] Agreement and the restrictive covenants in the [Duddlesten] Deed on
May 21, 2001, when it caused the final plat for Riata Ranch, Section 10, to be
recorded." 

 Duddlesten filed suit on February 13, 2004, within four years of the date that
Cypress recorded the final plat for the subdivision. See Tex. Civ. Prac. & Rem.
Code Ann. § 16.051 (Vernon 1997) (stating that every action for which there is no
statute of limitations must be brought within four years after the cause of action
accrues); see also Stine, 80 S.W.3d at 592 (noting that the statute of limitations for
breach of contract claims is four years). Duddleston's only potential breach of
contract claim remaining is for breach of the restrictive covenant. Duddleston argues
that, as a matter of law, this claim accrued on the date that the final plat was filed and
he filed his claim within four years of this date. (5) We disagree. On its face, the final
plat does not breach any of the terms of the restrictive covenant. However, as we note
above, there is a fact issue regarding what, if anything, Cypress has done to the
property since it was deeded and, specifically, if its landscaping of the property
breached the terms of the restrictive covenant. Because this fact issue exists, there
is also a fact issue as to when the claim for the alleged breach arose. Accordingly,
Cypress is not entitled to rendition on its cross-motion on this issue. 

 We overrule issue three.
Conclusion
 

 We reverse the trial court's summary judgment on liability and render judgment
that Cypress did not breach the Development Agreement, and we remand the
remaining claims for further proceedings consistent with this opinion.


 George C. Hanks, Jr.

 Justice


Panel consists of Justices Hanks, Bland, and Wilson. (6) 
1. The information contained herein was found in the parties' pleadings.
2. In its motion for summary judgment, Cypress asserted that Duddlesten had breached
its contract by failing to dedicate a roadway easement. See Russell v. City of Bryan,
919 S.W.2d 698, 702 (Tex. App.--Houston [14th Dist.] 1996, writ denied)
("Dedication is defined as the appropriation of land, or an easement therein, by the
owner, for the use of the public, and accepted for such use by or on behalf of the
public."). Joe L. Thomas, attorney and officer with the Duddlesten Companies,
testified that, under the Russell definition, Duddlesten has not so dedicated a roadway
easement. 
3. The jury was instructed that "the land in question means the commercial reserve
property of Plaintiff on Barker Cypress Road."
4. The doctrine of easement by estoppel or estoppel in pais, an exception to the
requirement of a writing to create an easement, does not apply in this case. Three
elements are necessary to the creation of an easement by estoppel: (1) a
representation, communicated, either by word or action, to the promisee; (2) the
communication was believed; and (3) the promisee relied on the communication to
his detriment. Drye v. Eagle Rock Ranch, Inc., 364 S.W.2d 196, 211 (Tex. 1962);
Murphy v. Long, 170 S.W.3d 621, 625 (Tex. App.--El Paso 2005, pet. denied). There
is no evidence in the record that Cypress ever communicated, either by its words or
actions, to Duddlesten that it would create an easement on its property. Therefore,
this exception to the Statute of Frauds does not apply.
5. Duddleston argues that he is not asserting the discovery rule with respect to the
accrual of his breach of contract claims. 
6. The Honorable Davie L. Wilson, retired Justice, Court of Appeals, First District of
Texas at Houston, sitting by assignment.