Opinion issued October 5, 2006



 
 



     





In The
Court of Appeals
For The
First District of Texas




NO. 01-04-01036-CV




STEPHEN E. MCCLEERY, Appellant

V.

COMMISSION FOR LAWYER DISCIPLINE, Appellee




On Appeal from the 55th District Court
Harris County, Texas
Trial Court Cause No. 2003-26068




O P I N I O N

          The Commission for Lawyer Discipline, appellee, initiated a disciplinary action
against Stephen E. McCleery, appellant. After a bench trial, the trial court found that
McCleery committed professional misconduct in violation of Texas Disciplinary
Rules of Professional Conduct (“TDRPC”) 1.04(a) and 1.04(c) and, as sanction,
imposed a public reprimand and ordered McCleery to pay $20,000 in restitution. In
15 points of error, McCleery argues that the evidence was legally and factually
insufficient to support the trial court’s findings of facts and conclusions of law and
that the $20,000 sanction was excessive. We affirm.
Background
          Alonzo Williams filed a grievance with the State Bar of Texas against his
attorney, McCleery. A panel of the District Grievance Committee found that
McCleery violated several rules of the TDRPC. It recommended that McCleery
accept a private reprimand and make restitution to the State Bar of Texas. McCleery
rejected the District Grievance Committee’s recommendation and appealed the
recommendation to the State District Court. 
          A trial on the merits was conducted on May 14, 2004. There were two
witnesses at trial—McCleery and Williams.


 The trial court filed extensive findings
of fact and conclusions of law set forth below. 
 
Findings of Fact



1. At all times relevant to this disciplinary lawsuit, Respondent was an
attorney licensed to practice law in Texas . . . and a member of the
State Bar of Texas.
 
2. At the time this disciplinary lawsuit was filed, Respondent’s
residence and principal place of practice was Harris County, Texas.
 
3. In March 1998, Respondent came to represent Alonzo Williams
(“Williams”) in a legal matter.
 
4. This representation was by way of referral from the Houston
Volunteer Lawyers Program (“HVLP”).
 
5. The HVLP is an organization whereby lawyers volunteer their time
to assist low-income persons with their legal problems.
 
6. As a part of that referral, Respondent received a letter from HVLP
outlining its policies and expectations of the volunteer lawyers.
 
7. Respondent was notified, he understood, and he accepted that the
legal work he was to provide Williams was to be pro bono.
 
8. Respondent also understood that, because only those persons who
met certain financial eligibility requirements qualified for pro bono
services, Williams was a low-income person. 
 
9. Respondent understood that it was HVLP’s policy to donate to HVLP
any attorneys’ fees that might be awarded in the course of his
representation.
 
10. After Respondent’s initial interview with Williams, Respondent
signed the HVLP “Initial Disposition” form agreeing to represent
Williams at “NO CHARGE”.
 
11. Respondent, Williams, and Williams’ wife also signed a
“Professional Services Agreement” (“PSA”) that constituted the
attorney-client relationship between Respondent and the Williams’.
 
12. The PSA states that HVLP attorneys do not charge for attorney
services.
 
13. Respondent agreed to represent the Williams’ in a legal matter
concerning defective home repairs and the financing thereof.
 
14. The PSA stated the scope of representation, which was to: contact
the financing company concerning repayment of the note; draft a
Deceptive Trade Practices Act (“DTPA”) demand letter to the home
repair business; and forward a copy of that demand letter to the
financing company.
 
15. Respondent drafted the demand letter and threatened litigation
unless the matter was resolved.
 
16. Although the PSA does not explicitly reference litigation,
Respondent agreed that he would, on a pro bono basis, file a lawsuit on
behalf of the Williams’ and take the case through trial if it became
necessary.
 
17. Respondent’s status reports to HVLP from July 1998 through
November 1999 confirm that he was engaging in litigation pro bono
under the PSA.
 
18. Respondent filed a First Amended Original Petition in June 1999
alleging a DTPA violation, fraud, conspiracy, and breach of contract. 
The Petition sought treble and exemplary damages.
 
19. An April 2000 mediation failed to settle the case.
 
20. The lawsuit had a 9:30 a.m. May 22, 2000 trial setting in Houston.
 
21. Williams’ wife had passed away by this time, and he was living in
Louisiana with relatives.
 
22. Trial had not actually begun the morning of May 22. However, the
court stated at a status conference that trial would begin the next
morning.
 
23. In the evening of May 22, Respondent met Williams at a restaurant
for dinner.
 
*24. At this time, Respondent and Williams still had an attorney-client
relationship under the pro bono PSA.
 
*25. During the course of the one-hour dinner meeting, Respondent
presented to Williams a Legal Representation and Fee Agreement (“Fee
Agreement”).
 
26. This document had not been sent to Williams prior to May 22. 
Thus, Williams saw this fee-based contract for the first time on May 22
when he had traveled to Houston from Louisiana awaiting the start of
trial.
 
*27. Prior to May 22, Respondent had never presented to either Mr. or
Mrs. Williams any representation agreement other than the PSA.
 
28. Respondent did not tell Williams that he could have an independent
legal review of that document done by another lawyer.
 
29. The Fee Agreement was presented to Williams over two years after
his attorney-client relationship with Respondent began.
 
30. Williams was elderly, infirm, indigent, and had only a grade school
education.
 
31. Under these circumstances, Williams signed the Fee Agreement.
 
32. Respondent had a fiduciary relationship with Williams when he
presented Williams with the Fee Agreement.
 
*33. The Fee Agreement would have changed the attorney-client
relationship between Respondent and Williams from pro bono to fee-based.
 
34. This change in relationship would have benefited [sic] Respondent.
 
*35. Williams would not have gained any additional or different benefit
from this new arrangement than he would have received under the pro
bono PSA.
 
*36. At no time did Respondent contact HVLP to either: close the
Williams matter; withdraw from the HVLP arrangement; notify them of
a fee-based arrangement; or complete a Final Disposition form as
required.
 
*37. The Fee Agreement called for Respondent to receive 40% of “all
sums collected.”
 
38. After trial resulted in a verdict in Williams’ favor, negotiations
produced a final settlement.
 
39. Williams was to receive a $36,210 cash payment plus debt
forgiveness of $13,790.
 
*40. Respondent later characterized the settlement as a $50,000 award
and thus, under the Fee Agreement, took 40% of $50,000 – or $20,000
– as attorneys’ fees.
 
41. Respondent also withheld $1,427 for expenses incurred.
 
42. Therefore, out of the $36,210 cash payment, Respondent kept
$21,427 leaving Williams with $14,783 in cash.
 
*43. If respondent had not taken the $20,000 fee that money would
have went [sic] to Williams.
 
44. Respondent did not donate his $20,000 attorneys’ fee to HVLP.
 
45. Respondent has not made any restitution to Williams or his estate.

Conclusions of Law
 
1. At all times relevant to this disciplinary lawsuit, Respondent was an
attorney licensed to practice law in Texas . . . and a member of the
State Bar of Texas.
 
2. At the time this disciplinary lawsuit was filed, Respondent’s
residence and principal place of practice was Harris County, Texas.
 
3. This Court has jurisdiction over the parties and subject matter of this
case and venue is appropriate in Harris County, Texas.
 
*4. Respondent committed professional misconduct as defined by Rule
1.06(Q) of the TRDP [“Texas Rules of Disciplinary Procedure”]
and in violation of one or more of the Texas Disciplinary Rules of
Professional Conduct (The “TDRPC”). 
 
*5. On June 29, 2004, following a trial on the merits, the Court found
Respondent violated Rule 1.04(a) [entering into an arrangement for,
charging or collecting an illegal fee or unconscionable fee] of the
TDRPC.
 
*6. On June 29, 2004, following a trial on the merits, the Court found
Respondent violated Rule 1.04(c) [when the lawyer has not regularly
represented the client, failing to communicate to the client the basis or
rate of the fee before or within a reasonable time after commencing the
representation] of the TDRPC. 
 
*7. A Public Reprimand is the appropriate sanction for the acts of
professional misconduct encompassed by Rules 1.04(a) [entering into
an arrangement for, charging or collecting an illegal fee or
unconscionable fee] and 1.04(c) [when the lawyer has not regularly
represented the client, failing to communicate to the client the basis or
rate of the fee before or within a reasonable time after commencing the
representation].
 
*8. Restitution to the Estate of Alonzo Williams in the amount of
Twenty-Thousand Dollars ($20,000.00) is appropriate to be included in
the sanction of Respondent and shall be paid by Respondent.
 
*9. The Chief Disciplinary Counsel of the State Bar of Texas
incurred reasonable attorneys’ fees in the amount of Nine-Thousand
Seven-Hundred Eighty-One Dollars and Twenty-Five Cents ($9,781.25)
that shall be paid by Respondent as part of Respondent’s sanction.
 
*10. The Chief Disciplinary Counsel of the State Bar of Texas
incurred costs and expenses in the amount of One-Thousand Four-Hundred Ninety-Three Dollars and Thirty-Five Cents ($1,493.35) that
shall be taxed against Respondent as part of Respondent’s sanction. 

Sufficiency
          Almost all of McCleery’s points of error complain of the sufficiency of the
evidence to support the trial court’s findings of fact, conclusions of law, or judgment.
Standard of Review
          In an appeal from a bench trial, findings of fact have the same weight as a
jury’s verdict upon special issues. Lee v. Lee, 981 S.W.2d 903, 905 (Tex.
App.—Houston [1st Dist.] 1998, pet. denied). Such findings, if challenged, are
reviewable for legal and factual sufficiency of the evidence by the same standards
applicable in reviewing the sufficiency of the evidence supporting a jury’s findings. 
City of Pasadena v. Gennedy, 125 S.W.3d 687, 691 (Tex. App.—Houston [1st Dist.]
2003, pet. denied); Lee, 981 S.W.2d at 905–06. Thus, if the complaining party
challenges the legal sufficiency of the evidence underlying an adverse finding on
which the party did not have the burden of proof, then the party must demonstrate on
appeal that there is no evidence to support the finding. Gennedy, 125 S.W.3d at 691. 
In such a review, we consider all the evidence in the light most favorable to the
prevailing party, indulging every reasonable inference in that party’s favor, and
disregard all evidence and inferences to the contrary. Id. at 692. We do not disregard
contrary evidence if there is no favorable evidence, or if contrary evidence renders
supporting evidence incompetent or conclusively establishes the opposite. City of
Keller v. Wilson, 168 S.W.3d 802, 810-11 (Tex. 2005). If more than a scintilla of
evidence supports the finding, the no-evidence challenge fails. Gennedy, 125 S.W.3d
at 692.
          In our review of factual sufficiency of the evidence, we must consider and
weigh all of the evidence. Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986). 
We will set aside a verdict only if the evidence is so weak or if the finding is so
against the great weight and preponderance of the evidence that it is clearly wrong
and unjust. Id.
Unconscionable Fee 
          In points of error one, two, and three, McCleery argues that the trial court erred
in entering final judgment of public reprimand against him because he did not, as a
matter of law, violate Rule of Professional Conduct 1.04(a) and the evidence was
legally and factually insufficient to support such a finding. 
          Rule 1.04(a) provides that “a lawyer shall not enter into an arrangement for,
charge, or collect an illegal fee or unconscionable fee. A fee is unconscionable if a
competent lawyer could not form a reasonable belief that the fee is reasonable.” Tex.
Disciplinary R. Prof’l Conduct 1.04(a), reprinted in Tex. Gov’t Code Ann., tit.
2, subtit. G app. A (Vernon 1998) (Tex. State Bar R. art. X, § 9). Rule 1.04(b) lists
some factors to consider when determining if a fee is reasonable. The comment to the
Rule recognizes that “reasonableness” can be vague or uncertain, and that is why, to
invoke disciplinary action, the fee must rise to the level of being illegal or
unconscionable. Tex. Disciplinary R. Prof’l Conduct 1.04 cmt. 1. “Except in
very unusual situations, . . . the circumstances at the time a fee arrangement is made
should control in determining a question of unconscionability.” Tex. Disciplinary
R. Prof’l Conduct 1.04 cmt. 7. Comment 8 goes on to say that overreaching and
a lawyer’s failure to accurately explain how a fee is calculated are two factors to
consider when evaluating whether a fee is unconscionable.
8. Two factors in otherwise borderline cases might indicate a fee may
be unconscionable. The first is overreaching by a lawyer, particularly
of a client who was unusually susceptible to such overreaching. The
second is a failure of the lawyer to give at the outset a clear and accurate
explanation of how a fee was to be calculated. For example, a fee
arrangement negotiated at arm’s length with an experienced business
client would rarely be subject to question. On the other hand, a fee
arrangement with an uneducated or unsophisticated individual having
no prior experience in such matter should be more carefully scrutinized
for overreaching. While the fact that a client was at a marked
disadvantage in bargaining with a lawyer over fees will not make a fee
unconscionable, application of the disciplinary test may require some
consideration of the personal circumstances of the individuals involved. 
Tex. Disciplinary R. Prof’l Conduct 1.04 cmt. 8.
          Citing to Rule 1.04(a), McCleery argues that “a lawyer is subject to discipline
under Rule 1.04(a) only if he charges or collects an illegal fee or unconscionable fee,
and a fee can only be unconscionable if a competent lawyer could not form a
reasonable belief that the fee is reasonable.” 
          McCleery acknowledged that Williams was “elderly, infirm, indigent, and had
only a grade school education.” Therefore, the fee arrangement “should be more
carefully scrutinized for overreaching.” Id. On May 22, 2002, the night before trial,
McCleery met with Williams, his pro bono client. Williams, whose wife had died
during the litigation, had moved back to Louisiana and had traveled to Houston for
the trial. During dinner on the eve of trial, for the first time, McCleery presented
Williams with a 40 percent contingency fee contract on the basis of “all sums
collected.” Although forgiveness of the note and release of lien on Williams’s house
was a remedy sought in the litigation, McCleery did not explain that his fee would
also be calculated on any non-cash award received. 
          McCleery testified that he did not present Williams with the new agreement
before the eve of trial, and he admitted that Williams received no further benefit
under the new fee-based contract. His explanation, however, is that, after an
unsuccessful mediation one month before trial, Williams suggested that McCleery
and his new partner, Kim, receive a fee. Williams denied having suggested a fee as
follows:



Q.Mr. Williams, was it your idea that the lawyer should get money
if this case went to trial?
 
A.No, no, no, no, no.
 
Q.When the contract was presented –
 
A.The only thing I heard about the money was at the trial, was at the
trial. And he said, I’m going to have to charge you 40 percent. 
And that all was ever said. He never explained to me nothing
about how it was going to be charged or nothing.
 
Here, the trial court commented that it was “going to take everything that Mr.
McCleery says as absolute fact, okay. That he suggested some form of [fee], said, I
don’t care y’all – y’all deal with the rest of it, fine. And you’ve got a month.” So,
even ignoring Williams’s testimony, the trial court found McCleery’s 11th hour fee
agreement unconscionable. We do, too. 
          We hold that the evidence is legally and factually sufficient to support the trial
court’s finding that McCleery violated Rule of Professional Conduct 1.04(a), and we
overrule points of error one, two, and three. 
Failure to Communicate
          In points of error four, five, and six, McCleery argues that the trial court erred
in entering final judgment of public reprimand against him because he did not, as a
matter of law, violate Rule of Professional Conduct 1.04(c), and the evidence was
legally and factually insufficient to support such a finding.
          Rule 1.04(c) provides that “when the lawyer has not regularly represented the
client, the basis or rate of the fee shall be communicated to the client, preferably in
writing, before or within a reasonable time after commencing the representation.” 
Tex. Disciplinary R. Prof’l Conduct 1.04(c).
          McCleery argues that there are two issues to be decided under Rule 1.04(c): 
“1) whether McCleery regularly represented Williams; and 2) if not, whether
KIM*MCCLEERY communicated to Williams the fee agreement, preferably in
writing, before or within a reasonable time after commencing the representation for
a fee.” McCleery asserts that he regularly represented Williams over the course of
two years; he had no obligation to notify Williams of the change in the basis for the
fee, but that he did present Williams with the written terms of the agreement on the
very next occasion that McCleery saw Williams; and, even if he did not regularly
represent Williams, McCleery did not violate Rule 1.04(c) because
KIM*MCCLEERY agreed to the fee arrangement one month before trial at the
mediation and a written agreement was presented on the next occasion that the parties
met. 
          McCleery admitted that he did not present Williams with the written
contingency fee agreement until the eve of trial. He admitted that, before the eve of
trial, he had never presented Williams with any representation agreement other than
the PSA. He did not tell Williams that he could have an independent legal review of
the contract. He had represented Williams in only this one matter. McCleery testified
that the fee agreement changed the attorney-client relationship with Williams, and the
change benefitted McCleery only. Williams would not have gained any additional
or different benefit from this new arrangement.
          McCleery had a fiduciary relationship with Williams, an elderly, infirm,
indigent man with only a grade school education. Under these circumstances,
Williams signed the fee agreement on the day he traveled in from Louisiana to start
trial the following day.
          We hold that there is legally and factually sufficient evidence to support the
finding that McCleery violated TDRPC 1.04(c). We overrule points of error four,
five, and six.
Excessive Restitution
          In points of error seven, eight, and nine, McCleery contends that the trial court
erred in entering a final judgment of public reprimand ordering him to pay Williams’s
estate $20,000 because the award is excessive and the evidence is legally and
factually insufficient to support such an award. Specifically, McCleery argues that
the trial court failed to consider the mandatory guidelines set forth in TRDP.
          Rule 3.10 “Imposition of Sanctions” provides as follows:
 
The trial court may, in its discretion, conduct a separate evidentiary
hearing on the appropriate Sanction or Sanctions to be imposed. . . . In
determining the appropriate Sanctions, the court shall consider:
 
A.The nature and degree of the Professional Misconduct for which
the Respondent is being sanctioned;
 
B.The seriousness of and circumstances surrounding the
Professional Misconduct;
 
C.The loss or damage to clients;
 
D.The damage to the profession;
 
E.The assurance that those who seek legal services in the future will
be insulated from the type of Professional Misconduct found;
 
F.The profit to the attorney;
 
G.The avoidance of repetition;
 
H.The deterrent effect on others;
 
I.The maintenance of respect for the legal profession;
 
J.The conduct of the Respondent during the course of the
Committee action;
 
K.The trial of the case; and
 
L.Other relevant evidence concerning the Respondent’s personal
and professional background. 
 
In addition, the Respondent’s disciplinary record, including any private
reprimands, is admissible on the appropriate Sanction to be imposed. 
Respondent’s Disability may not be considered in mitigation, unless
Respondent demonstrates that he or she is successfully pursuing in good
faith a program of recovery.

Tex. R. Disciplinary P. 3.10, reprinted in Tex. Gov’t Code Ann., tit. 2, subtit. G
app. A-1 § 3.10 (Vernon 2005).
          McCleery contends that the Commission for Lawyer Discipline “brought this
action as a thinly veiled attempt to enforce what it believes was a breach of contract
and/or contract of adhesion.” There is no support for this theory in the record. He
also argues that the sanction is excessive because he split the $20,000 with his law
partner.
          McCleery testified that he was entitled to 40 percent of the $50,000 settlement
in conformance with the fee-based arrangement. He further testified that he received
$20,000 that would have otherwise been awarded to Williams, and he did not donate
his $20,000 attorney’s fee to HVLP, despite understanding that it was HVLP’s policy
to donate to HVLP any attorney’s fees that might be awarded in the course of his
representation. He took advantage of an “elderly, infirm, and indigent” client with
whom he had a fiduciary relationship for several years, and he, in effect, took $20,000
from this indigent client.
          Considering the Rule 3.10 factors, we hold that the evidence is legally and
factually sufficient to support the $20,000 sanctions award. We overrule points of
error seven, eight, and nine.
Findings of Fact and Conclusions of Law 
          In points of error 11 and 12, McCleery argues that the evidence was legally and
factually insufficient to support Findings of Fact 24, 25, 27, 33, 35, 36, 37, 40, and
43. In points of error 13, 14, and 15, McCleery contends that the findings of fact do
not support and the evidence is legally and factually insufficient to support
Conclusions of Law 4, 5, 6, 7, 8, 9, and 10.
          Findings of Fact
          The contested findings of fact are listed below followed by McCleery’s
testimony regarding each of the findings.
          24. At this time, Respondent and Williams still had an attorney-client
relationship under the pro bono PSA.
Q.When you sat down with Mr. Williams that evening, you still had
an attorney/client relationship did you not?
 
          A.      I thought we did, yes.
 
Q.It was under the pro bono professional services agreement wasn’t
it?
 
A.No, I think that the relationship was based on my understanding
that I represented Mr. Williams and I agreed to represent Mr.
Williams and I continued to and as it’s reflected in all these other
exhibits, I completed what I agreed to do for HVLP and I was
pushing on with trial and I always understood Mr. Williams to be
my client.
 
Q.There was no other representation agreement between you and
Mr. Williams other than what’s in Exhibit 3 at the time you met
on May 22nd?
 
          A.      That is true. That’s true.
 
Q.So, your fiduciary responsibility to Mr. Williams was still in
existence at the time you presented him with Exhibit 15?
 
          A.      Yes, it was.

          25. During the course of the one-hour dinner meeting, Respondent
presented to Williams a Legal Representation and Fee Agreement (“Fee
Agreement”).
Q.There was no time prior to May 22nd that you presented a fee-based contract to either of the Williamses?
 
          A.      No.
 
          Q.      Is that correct?
 
          A.      That’s correct.
 
Q.However, on May 22nd you did present a legal representation and
fee agreement to Mr. Williams; is that right?

          . . . 
 
          A.      Yeah, yeah. I did give it to him on the 22nd then.

          . . . 
 
          Q.      You presented this to Mr. Williams at dinner at Luby’s, correct?
 
          A.      Right.

          27. Prior to May 22, Respondent had never presented to either Mr. or
Mrs. Williams any representation agreement other than the PSA.
Q.Prior to May 22nd, isn’t it true you had never presented to either
Mr. or Mrs. Williams any representation agreement other than the
pro bono Professional Services Agreement?
 
          A.      Right.

          33. The Fee Agreement would have changed the attorney-client
relationship between Respondent and Williams from pro bono to fee-based.
          Q.      Exhibit 15, the fee arrangement you presented on May 22nd, this
changed your attorney/client relationship with Mr. Williams from pro
bono to fee based; is that correct?
 
          A.      Yes.

          35. Williams would not have gained any additional or different benefit
from this new arrangement than he would have received under the pro bono
PSA.
Q.. . . Isn’t it true that that contract did not change, did not give Mr.
Williams any additional benefit than he would have otherwise
received under the pro bono contract, any – 
 
A.In my – in my mind, the way I thought about it the whole time
through, probably not.

          36. At no time did Respondent contact HVLP to either: close the Williams
matter; withdraw from the HVLP arrangement; notify them of a fee-based
arrangement; or complete a Final Disposition form as required.
          While McCleery did testify that he called HVLP, and it ultimately sent him a 
“letter out that said, You’re no longer working for us,” he admitted that he understood 
that he had not acted as required in the initial authorization letter from HVLP. 
          37. The Fee Agreement called for Respondent to receive 40% of “all sums
collected.”
Q.[The contingency fee arrangement] states that you would receive
40 percent on quote “all sums collected” end quote, right?
 
          A.      Yes.

          40. Respondent later characterized the settlement as a $50,000 award and
thus, under the Fee Agreement, took 40% of $50,000 – or $20,000 – as attorneys’
fees.
Q.All right. And your letter states that the Williamses’ claim was
settled for 50,000?
 
          A.      Right.
 
          Q.      You took 40 percent of that?
 
          A.      Right.
 
          Q.      Which was 20,000?
 
          A.      Yeah.
 
Q.So, you took your attorney’s fees calculated both on the cash and
noncash portions of the settlement?
 
          A.      I did, 40 percent of the recovery.

          43. If Respondent had not taken the $20,000 fee that money would have
went [sic] to Williams.
Q.And if you hadn’t taken that 20,000, it would have gone to Mr.
Williams?
 
A.That’s – yeah, I’m assuming it would have.
 
          Reviewing the testimony that McCleery, himself, gave at trial, we hold that
there is more than a scintilla of evidence to support the findings and the evidence is
not so weak and the findings are not so against the great weight and preponderance
of the evidence that they are clearly wrong and unjust. See Pool, 715 S.W.2d at 635. 
Accordingly, we overrule points of error 11 and 12.
 
          Conclusions of Law
          4. Respondent committed professional misconduct as defined by Rule
1.06(Q) of the TRDP and in violation of one or more of the Texas Disciplinary
Rules of Professional Conduct (the “TDRPC”). 
          As we have already held, the evidence is legally and factually sufficient to 
support the trial court’s finding. 
          5. On June 29, 2004, following a trial on the merits, the Court found
Respondent violated Rule 1.04(a) [entering into an arrangement for, charging
or collecting an illegal fee or unconscionable fee] of the TDRPC.
          Having already overruled points of error one, two, and three, we need not 
address this complaint.
          6. On June 29, 2004, following a trial on the merits, the Court found
Respondent violated Rule 1.04(c) [when the lawyer has not regularly represented
the client, failing to communicate to the client the basis or rate of the fee before
or within a reasonable time after commencing the representation] of the TDRPC. 
          Having already overruled points of error four, five, and six, we need not 
address this complaint.
          7. A Public Reprimand is the appropriate sanction for the acts of
professional misconduct encompassed by Rules 1.04(a) [entering into an
arrangement for, charging or collecting an illegal fee or unconscionable fee] and
1.04(c) [when the lawyer has not regularly represented the client, failing to
communicate to the client the basis or rate of the fee before or within a
reasonable time after commencing the representation].
          McCleery provides no argument in his brief explaining why the trial court erred 
in imposing a public reprimand in addition to the restitution.
          8. Restitution to the Estate of Alonzo Williams in the amount of Twenty-Thousand Dollars ($20,000.00) is appropriate to be included in the sanction of
Respondent and shall be paid by Respondent.
          McCleery testified that he was entitled to 40 percent of the $50,000 settlement
in conformance with the fee-based arrangement. He received $20,000 that would
have otherwise been awarded to Williams, and he did not donate his $20,000
attorney’s fee to HVLP, despite understanding that it was HVLP’s policy to donate
to HVLP any attorney’s fees that might be awarded in the course of his
representation.
          9. The Chief Disciplinary Counsel of the State Bar of Texas incurred
reasonable attorneys’ fees in the amount of Nine-Thousand Seven-Hundred
Eighty-One Dollars and Twenty-Five Cents ($9,781.25) that shall be paid by
Respondent as part of Respondent’s sanction.
          Admitted into evidence were affidavits and fee statements from Brian A.
Schaffer and Jeannette M. Duer who testified that they incurred a total of $9,781.25
in attorneys’ fees in the prosecution of McCleery. The exhibit was admitted without
objection. McCleery argues that, because there were no findings of fact to support
the award of attorneys’ fees, the award was improper. See Tex. R. Civ. P. 299.


 We
disagree. The first part of Conclusion of Law 9 is actually a finding of fact. The trial
court is making a factual determination as to the attorneys’ fees incurred by the Chief
Disciplinary Counsel, and the second part is simply ordering the payment of the fees
as a sanction. The misnaming of the fact does not render it unsupportable given the
evidence presented and unobjected to at trial. 
          10. The Chief Disciplinary Counsel of the State Bar of Texas incurred
costs and expenses in the amount of One-Thousand Four-Hundred Ninety-Three
Dollars and Thirty-Five Cents ($1,493.35) that shall be taxed against Respondent
as part of Respondent’s sanction. 
          For the reasons stated under Conclusion of Law 9, we, too, find this complaint
without merit.
          We hold that there is more that a scintilla of evidence to support the
conclusions of law and the evidence is not so weak and the conclusions are not so
against the great weight and preponderance of the evidence that they are clearly
wrong and unjust. See Pool, 715 S.W.2d at 635. Accordingly, we overrule points of
error 13, 14, and 15.
Payment Plan
          In point of error 10, McCleery asserts that the trial court erred in entering a
final judgment of public reprimand ordering him to make monthly payments to
Williams’s estate because “the terms of the payment plan are arbitrary, not supported
by the evidence, and seek only to enforce a non-existent breach of contract claim.”
          At the conclusion of trial, the trial court ordered that McCleery had 24 months
to repay the $20,000 and 48 months to pay the $11,274 for the Commissions’
attorneys’ fees, costs, and expenses. When asked if it was ordering a payment plan,
the trial court responded, “I’ll tell you what, I’m ordering you - all to work out a
payment plan and put it into the judgment, okay. So, y’all have got some time to do
that.” The final judgment reflects a payment plan whereby McCleery, in 24 monthly
installments starting in June 2004, pays $833.33 to cover the $20,000 repayment. The
attorneys’ fees, costs, and expenses are to be paid off in 24 monthly installments of
$469.77 starting in June 2006. 
          We hold that McCleery has failed to show how this payment plan is “arbitrary,
not supported by the evidence, and seek[s] only to enforce a non-existent breach of
contract action.” We overrule point of error 10.
                                                   Conclusion
          We affirm the trial court’s judgment.


                                                             George C. Hanks, Jr.
                                                             Justice

Panel consists of Justices Taft, Keyes, and Hanks.