In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00175-CR


______________________________




DAROYCE EUGENE RODGERS, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the Fifth Judicial District Court


Cass County, Texas


Trial Court No. 2005-F-00057




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Daroyce Eugene Rodgers appeals from his jury convictions of possession of a controlled
substance (two counts). See Tex. Health & Safety Code Ann. § 481.115 (Vernon 2003). The
trial court sentenced Rodgers to eighteen years' confinement on the first count and ten years'
confinement on the second count, with the sentences to run concurrently. Rodgers was represented
by appointed counsel at trial and by different appointed counsel on appeal. Rodgers' appellate
attorney has filed a brief in which she concludes that, after a review of the record and the related law,
the appeal is frivolous and without merit. 

 The appeal in this case concerns the convictions of Rodgers for possession of a controlled
substance. Rodgers was indicted on three counts of possession of a controlled substance and one
count of engaging in organized criminal activity; he was tried on two of the possession counts. 
Rodgers pled not guilty to the charges, was found guilty by a jury, and was sentenced by the trial
court. 

 On November 1, 2004, police executed a search warrant on a residence located at 602 Price
Street in Atlanta, Texas. The warrant authorized the officers to look for illegal drugs and was
executed by officers entering the home without seeking consent from the occupants. Rodgers was
in the house, but fled when the officers executed the search warrant. He was not detained at that
time. On completion of the search, officers had located and seized 9.40 grams of cocaine and
baggies containing .17, .11, .13, and .07 grams of cocaine; they also found a baggie containing
capsules with a brown powder inside containing 2.39 grams of heroin. The State alleged the
residence in question was occupied by Rodgers. Officers testified there was a photograph of Rodgers
and his brother on one of the walls of the home, mail addressed to Rodgers at that address, and
clothing that appeared to be Rodgers' clothing at the address. Police officer T. J. Hawley testified
that he had visited the residence on a prior occasion due to issues involving animals, that Rodgers
had been there, and that Rodgers claimed ownership of some of the animals at the residence. 
Further, Harry Hines, who was one of the people in the house at the time the search warrant was
executed, testified he had visited Rodgers at the home on prior occasions.

 Appellate counsel summarizes the trial in her brief and states that she has studied the record
and finds no error preserved for appeal that could be successfully argued. The brief contains a
professional evaluation of the record and advances two arguable grounds for review. This meets the
requirements of Anders v. California, 386 U.S. 738 (1967); Stafford v. State, 813 S.W.2d 503 (Tex.
Crim. App. 1991); and High v. State, 573 S.W.2d 807 (Tex. Crim. App. [Panel Op.] 1978).

 Counsel mailed a copy of the brief to Rodgers on February 5, 2007, informing Rodgers of
his right to examine the entire appellate record and to file a pro se response. Counsel simultaneously
filed a motion with this Court seeking to withdraw as counsel in this appeal. This Court notified
Rodgers that any pro se response was due on or before March 7, 2007. Rodgers has not filed a
response, nor has he requested an extension of time in which to file such a response. 

 We have reviewed the possible issues raised by counsel in her appellate brief, and we agree
with her assessment that no reversible error exists. Our review of the record has not revealed other
error. (1)

 We affirm the judgment of the trial court. 


 Jack Carter

 Justice


Date Submitted: April 11, 2007

Date Decided: April 12. 2007


Do Not Publish



1. Since we agree this case presents no reversible error, we also, in accordance with Anders,
grant counsel's request to withdraw from further representation of Rodgers in this case. No
substitute counsel will be appointed. Should Rodgers wish to seek further review of this case by the
Texas Court of Criminal Appeals, Rodgers must either retain an attorney to file a petition for
discretionary review or he must file a pro se petition for discretionary review. Any petition for
discretionary review must be filed within thirty days from the date of either this opinion or the last
timely motion for rehearing that was overruled by this Court. See Tex. R. App. P. 68.2. Any petition
for discretionary review must be filed with this Court, after which it will be forwarded to the Texas
Court of Criminal Appeals along with the rest of the filings in this case. See Tex. R. App. P. 68.3. 
Any petition for discretionary review should comply with the requirements of Rule 68.4 of the Texas
Rules of Appellate Procedure. See Tex. R. App. P. 68.4.


2d 686, 690 (Tex. 1989); City of Pasadena v. Gennedy, 125 S.W.3d 687, 692 (Tex.
App.--Houston [1st Dist.] 2003, pet. denied). In conducting our legal sufficiency review, we first
examine the record for evidence that supports the challenged finding, ignoring the evidence to the
contrary. Francis, 46 S.W.3d at 241. If no evidence exists to support the finding, we then examine
the entire record to determine if the contrary proposition is established as a matter of law, and we
will sustain the point of error only if the contrary proposition was conclusively established.

 When a party with the burden of proof attacks the factual sufficiency of the evidence, it must
demonstrate that the adverse finding is against the great weight and preponderance of the evidence.
Id. at 242. In conducting our factual sufficiency review, we must consider and weigh all of the
evidence, and may set aside a verdict only if the evidence is so weak or if the finding is so against
the great weight and preponderance of the evidence that it is clearly wrong and unjust.

 In this circumstance, the only evidence which was presented concerning the values of the
property in question were those advanced by the Bowie CAD. Therefore, even though those
opinions regarding value and the bases upon which those opinions were based were aggressively
challenged by Daily, they were the only values upon which the trial court could base its judgment. 
There was no contrary evidence presented. Therefore, the weighing process for conflicting evidence
is simple: there is evidence on one side; there is no evidence on the other. There is ample evidence
to sustain the legal sufficiency of the evidence. Since the burden of proof was on Daily to show an
excessive evaluation and he presented no proof of that proposition, it is also factually sufficient. 

 As to the issue propounded by Daily regarding the alleged violations of the Open Meetings
Act and the Texas Public Information Act, this is so sparsely briefed as to defy even the most
generous treatment. Daily fails even to identify which portion or requirement of the Open Meetings
Act (Texas Government Code Chapter 551) or the Texas Public Information Act (Texas Government
Code Chapter 552) he believes were violated or the relevance which he believes it has to this case. 
See Tex. Gov't Code Ann. §§ 551.001-.146, 552.001-.353 (Vernon 2004 & Supp. 2007). We
would be forced to simply guess as to the nature of this complaint. Because it is inadequately briefed,
we decline to address this issue. See Tex. R. App. P. 38.

 Daily complains that the Bowie CAD fails to take into account the diminution in value placed
upon some of his properties by zoning restrictions, pointing out that they are zoned as residential,
but are valued by the Bowie CAD by looking at their value as commercial property. Daily cites
Section 23.22 of the Texas Tax Code, which reads:

 In appraising land the use of which is subject to a restriction that is imposed
by a governmental entity and to which the owner of the land has not consented,
including a restriction to preserve wildlife habitat, the chief appraiser shall consider
the effect of the restriction on the value of the property.


Tex. Tax Code Ann. § 23.22 (Vernon 2001).

 It is undisputed that the Bowie CAD had placed appraised values on some of Daily's 
properties as commercial properties and applied commercial values to these tracts in arriving at their
values (even though some of these properties were then zoned by the Cities of Texarkana and Wake
Village for residential use only). We find no reported cases which carry even any mention of Section
23.22 of the Texas Tax Code or make any construction of its application to the facts at hand. 

 Moore testified that he was aware that some of Daily's properties were currently zoned for
residential use only, but that they were readily capable of being re-zoned as commercial properties
(as had nearby tracts) and that he believed that the market value approach to appraisal of Daily's
properties should reflect this fact. Accordingly, the Bowie CAD did "consider the effect" of the
restriction on the properties as required by Section 23.22 of the Texas Tax Code and deemed the
current zoning classification to have negligible effect on the values as based upon the highest and
best use of the parcels. Once that determination was made, it would have been Daily's burden to
rebut this consideration and to have shown alternate values of the properties as residential use. The
only potential evidence which Daily provided as to the values was that he maintained during cross-examination of the Bowie CAD's witness that these properties were totally worthless as residential
properties. Therefore, the only possible evidence presented to the trial court of the value of the
properties was either that they were worthless or that their values were that which was advanced by
the Bowie CAD. "In its role as fact-finder, the trial court is the sole arbiter of a witness's credibility
and the weight to be given his testimony." In re A.R., No. 05-06-00589-CV, 2007 Tex. App. LEXIS
8286, at *22 (Tex. App.--Dallas Oct. 19, 2007, no pet. h.) (citing Bellefonte Underwriters Ins. Co.
v. Brown, 704 S.W.2d 742, 744-45 (Tex. 1986)). The trial court committed no error in weighing
these two positions and finding in favor of the Bowie CAD. 

 Daily filed with his brief a "SCHEDULE OF COST AND DAMAGES" which includes items
for "LEGAL ADVISE [sic] AND ASISTANCE [sic] FROM ATTORINES [sic]" in the sum of
$2,600.00 and "MENTAL AND PHYSICLA [sic] PAIN, SLEEPLESS NIGHTS, GERERAL [sic]
HEALTH AND WEAKNESS AND COUNTLESS ORTHER [sic] DAMAGES" in the sum of
$500,000.00. Although he does not now complain of the failure of the trial court to award the half
a million dollars in pain and suffering damages, he does complain that he was unable to recover
attorney's fees. Section 42.29 of the Texas Tax Code does make provision for the award of attorney's
fees, limiting the amount of attorney's fees which can be awarded as being the lesser of
(1) $100,000.00; or (2) the total amount by which the property owner's tax liability is reduced as a
result of the appeal. Of course, this would presume that an attorney actually represented the
appellant; Daily was pro se in this matter and never offered evidence of actually having incurred
attorney's fees. See Tex. Tax Code Ann. § 42.29 (Vernon 2001). This point of error is overruled.

 We affirm the judgment.




 Bailey C. Moseley

 Justice


Date Submitted: October 11, 2007

Date Decided: November 28, 2007

1. The trial judge, presented with the evidence that Daily's home was built in 1965, rather than
the 1970 date reflected by the Bowie CAD's records, ordered the home to be re-evaluated with the
larger percentage of value diminution which the Bowie CAD would ordinarily employ for a house
of that age. As to the other valuations advanced by the Bowie CAD, these were sustained.